**UNDER SEAL**

**25-60572**

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOHN DOE,

*Petitioner*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent*.

On Petition for Review of an Order
of the Securities and Exchange Commission

**BRIEF OF RESPONDENT
SECURITIES AND EXCHANGE COMMISSION**

J. RUSSELL McGRANAHAN
General Counsel

JEFFREY R. JOHNSON
Solicitor

TRACEY A. HARDIN
Associate General Counsel

WILLIAM K. SHIREY
Senior Appellate Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5043 (Shirey)

## CERTIFICATE OF INTERESTED PERSONS
*Doe v. Securities and Exchange Commission*,
No. 25-60572

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Local Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Allevato, Peter J. (counsel for petitioner)

2. Anti-Fraud Coalition (*amicus curiae*)

3. Begakis, Steven C. (counsel for petitioner)

4. Better Markets (*amicus curiae*)

5. Chapman, Magdalene (*amicus curiae*)

6. Chueng, Erika (*amicus curiae*)

7. Clem, Kirtley (*amicus curiae*)

8. Connolly, J. Michael (counsel for petitioner)

9. Consovoy McCarthy PLLC (counsel for petitioner)

10. DeMar, Jacklyn (counsel for certain *amici curiae*)

11. Government Accountability Project (*amicus curiae*)

12. Guyer, Thad (counsel for certain *amici curiae*)

13. Hardin, Tracey A. (counsel for respondent)

14. Hayes-Deats, Caleb (counsel for certain *amici curiae*)

15. Johnson, Jeffrey R. (counsel for respondent)

16. Kane, Logan (petitioner John Doe)

17. Kohn, Kohn & Colapinto, L.L.P. (counsel for certain *amici curiae*)

18. Kohn, Stephen (counsel for certain *amici curiae*)

19. Lewis, Sophia (*amicus curiae*)

20. Lowell & Associates, P.L.L.C. (counsel for certain *amici curiae*)

21. McGranahan, J. Russell (counsel for respondent)

22. Metzger, Melissa (*amicus curiae*)

23. National Whistleblower Center (*amicus curiae*)

24. Securities and Exchange Commission (respondent)

25. SEC Whistleblower Advocates PLLC (counsel for respondent)

26. Shirey, William K. (counsel for respondent)

27. The Signals Network (*amicus curiae*)

28. Thomas, Jordan A. (counsel for petitioner)

29. T.M. Guyer & Friends, PC (counsel for certain *amici curiae*)

30. Watkins, Sherron (*amicus curiae*)

31. Westrick, Aaron (*amicus curiae*)

32. Whistleblower Aid (*amicus curiae*)

/s/ *William K. Shirey*

May 6, 2026                    William K. Shirey

## STATEMENT REGARDING ORAL ARGUMENT

The Commission concurs with petitioner Doe that oral argument could assist this Court in resolving the issues presented by the petition for review. Matters pending in the D.C. Circuit and the Eleventh Circuit raise similar issues. *See* Doe v. SEC, No. 25-1152 (D.C. Cir.); Doe v. SEC, Nos. 25-13647, -14016 (11th Cir.).

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................vi

PRELIMINARY STATEMENT ...............................................................................1

COUNTERSTATEMENT OF JURISDICTION .......................................................2

COUNTERSTATEMENT OF ISSUES ....................................................................3

COUNTERSTATEMENT OF THE CASE................................................................3

A.  Statutory and Regulatory Background................................................................3

   1.  Section 21's Whistleblower Incentives and Protections ..............................3

   2.  The Award Program .....................................................................................6

      a.  Original Information and the Original-Source Exception.........................8

      b.  "Led to the Successful Enforcement" of an Action ...............................10

      c.   Interplay of the Original-Source Exception and the "Led to"
      Requirement .................................................................................12

B.  Factual and Procedural Background  .................................................................17

   1.  SEC staff opened an examination and investigation into Robinhood based
   on public reports, including reports published by Doe. ..............................17

   2.  Doe filed an award application that was preliminary denied by Commission
   staff. .................................................................................19

   3.  The Commission denied Doe's reconsideration request............................21

STANDARD OF REVIEW .....................................................................................26

SUMMARY OF ARGUMENT ...........................................................................27

ARGUMENT .................................................................................................31

I. Doe's whistleblower submission did not lead to the success of the Covered Action...............................................................................................32

    A. Under Section 21F, a whistleblower's submission to the Commission must have "led to" the success of a covered action. ............................................33

    B. Doe's contrary reading is inconsistent with the statute's text, design, and purpose. ..................................................................................35

    C. Under Rule 21F-4(c)(1), a whistleblower's submission must also have led to the success of the covered action. ..........................................42

    D. Doe's policy arguments are misguided and, in any event, cannot override the text of Section 21F and the rules...........................................48

II. The Commission acted within its broad discretion in denying Doe's request for an exemption................................................................................51

CONCLUSION ...............................................................................................56

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*AMSE v. SEC,*
   826 F.3d 1017 (8th Cir. 2016) ................................................................. 27

*Api v. SEC,*
   953 F. Supp. 2d 5 (D.D.C. 2013) ............................................................. 54

*Bank of America, N.A. v. F.D.I.C.,*
   244 F.3d (11th Cir. 2001) ....................................................................... 26

*Barr v. SEC,*
   114 F.4th 441 (5th Cir. 2024) ............................................................ 52, 54

*BellSouth Corp. v. FCC,*
   162 F.3d 1215 (D.C. Cir. 1999) ............................................................... 51

*Business Roundtable v. SEC,*
   905 F.2d 406 (D.C. Cir. 1990) ................................................................. 52

*Comm'r v. Clark,*
   489 U.S. 726 (1989) .......................................................................... 32, 39

*Copley Fund, Inc. v. SEC,*
   796 F.3d 131 (D.C. Cir. 2015) ................................................................. 52

*Dig. Realty Tr., Inc. v. Somers,*
   583 U.S. 149 (2018) ............................................... 4, 5, 6, 16, 33, 38, 41

*Doe v. SEC,*
   28 F.4th 1306 (D.C. Cir. 2022) ............................................................... 47

*Doe v. SEC,*
   2026 WL 1191372 (D.C. Cir. May 1, 2026) ............................................. 48

*Doe v. SEC,*
   2023 WL 3562977 (3d Cir. Mar. 23, 2023) .............................................. 15

*Dolan v. U.S. Postal Serv.,*
   546 U.S. 481 (2006) ............................................................................... 32

*Encino Motorcars, L.L.C. v. Navarro,*
  579 U.S. 211 (2016) ........................................................................ 50

*FCC v. Fox TV Stations, Inc.,*
  556 U.S. 502 (2009) ........................................................................ 50

*FCC v. Prometheus Radio Project,*
  592 U.S. 414 (2021) ........................................................................ 26

*FDA v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) ........................................................................ 32

*Gujarat Fluorochemicals Ltd. v. United States,*
  153 F.4th 1376 (Fed. Cir. 2025) ...................................................... 44

*Kilgour v. U.S. SEC,*
  942 F.3d 113 (2d Cir. 2019) ............................................................ 33

*Kisor v. Wilkie,*
  588 U.S. 558 (2019) ........................................................................ 42

*Lawson v. FMR LLC,*
  571 U.S. 429 (2014) .......................................................................... 6

*Little David Coal Co. v. Dir., Off. of Workers' Comp. Programs,*
  532 F. App'x 633 (6th Cir. 2012) .................................................... 44

*Maracich v. Spears,*
  570 U.S. 48 (2013) ...................................................................... 32, 39

*Meisel v. SEC,*
  97 F.4th 755 (11th Cir. 2024) ............................................................ 9

*Motor Vehicle Mfrs. Assn. v State Farm Mutual Auto. Ins.,*
  463 U.S. 29 (1983) .......................................................................... 26

*NAACP v. FPC,*
  425 U.S. 662 (1976) ........................................................................ 53

*Ooida Risk Retention Group, Inc. v. Williams,*
  579 F.3d 469 (5th Cir. 2009) .......................................................... 46

*Ross v. SEC,*
  34 F.4th 1114 (D.C. Cir. 2022) .......................................................... 8

*Russello v. United States*,
464 U.S. 16 (1983) ................................................................................ 39

*Sackett v. EPA*,
598 U.S. 651 (2023) ............................................................................. 46

*Shell Offshore, Inc. v. Tesla Offshore, L.L.C.*,
905 F.3d 915 (5th Cir. 2018) ............................................................... 38

*Sierra Club v. U.S. DOI*,
990 F.3d 909 (5th Cir. 2021) ............................................................... 27

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ............................................................................. 44

*Sw. Elec. Power Co. v. U.S. EPA*,
920 F.3d 999 (5th Cir. 2019) ............................................................... 32

*Terre Haute & I.R. Co. v. Indiana ex rel. Ketcham*,
194 U.S. 579 (1904) ............................................................................. 51

*TNT Crane & Rigging, Inc. v. OSHRC*,
74 F.4th 347 (5th Cir. 2023) ............................................................... 42

*Tobar v. Garland*,
65 F.4th 195 (5th Cir. 2023) ............................................................... 26

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) ............................................................................... 37

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
484 U.S. 365 (1988) ............................................................................. 31

*United States. v. Marte*,
356 F.3d 1336 (11th Cir. 2004) ........................................................... 42

*United States v. Palomares*,
52 F.4th 640 (5th Cir. 2022) ......................................................... 31-32

*United States v. Quintanilla*,
114 F.4th 453 (5th Cir. 2024) ............................................................. 54

*Universal City Studios L.L.L.P. v. Peters*,
402 F.3d 1238 (D.C. Cir. 2005) ......................................................... 54

*Universal Health Servs. v. United States*,
  579 U.S. 176 (2016) ......................................................................................... 47

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014) ......................................................................................... 36

*Watkins v. City of Montgomery*,
  775 F.3d 1280 (11th Cir. 2014) ....................................................................... 44

*Wyo. Outdoor Council v. U.S. Forest Serv.*,
  165 F.3d 43 (D.C. Cir. 1999) ........................................................................... 44

## Statutes

Securities Act of 1933, 15 U.S.C. § 77a, *et seq.*
  Section 17(a)(2), 15 U.S.C. § 77q(a)(2) ........................................................... 18
  Section 17(a)(3), 15 U.S.C. § 77q(a)(3) ........................................................... 18

Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, et seq.
  Section 10A(b), 15 U.S.C. 78j(b) ..................................................................... 11
  Section 10A(m)(4), 15 U.S.C. 78j(m)(4) ......................................................... 11
  Section 21F, 15 U.S.C. § 78u-6 ......................................... 1, 3, 4, 8, 21, 31, 35
  Section 21F(a)(1), 15 U.S.C. § 78u-6(a)(1) ....................................................... 6
  Section 21F(a)(3), 15 U.S.C. § 78u-6(a)(3) .................................................. 8, 34
  Section 21F(a)(3)(A), 15 U.S.C. § 78u-6(a)(3)(A) ..................................... 29, 38
  Section 21F(a)(3)(B), 15 U.S.C. § 78u-6(a)(3)(B) ................................... 9, 28 39
  Section 21F(a)(3)(C), 15 U.S.C. § 78u-6(a)(3)(C) ........................................... 34
  Section 21F(a)(5), 15 U.S.C. § 78u-6(a)(5) ..................................................... 36
  Section 21F(a)(6), 15 U.S.C. § 78u-6(a)(6) ....................... 1, 4, 6, 8, 33, 39, 40
  Section 21F(b)(1), 15 U.S.C. § 78u-6(b)(1) ... 1, 4, 6, 10, 14, 27, 28, 29, 32, 33, 36, 37, 42
  Section 21F(b)(1)(A), 15 U.S.C. § 78u-6(b)(1)(A) ............................................ 4
  Section 21F(b)(1)(B), 15 U.S.C. § 78u-6(b)(1)(B) ............................................ 4
  Section 21F(b)(2)(D), 15 U.S.C. § 78u-6(b)(2)(D) ......................................... 40
  Section 21F(c)(1), 15 U.S.C. § 78u-6(c)(1)(B)(i)(I) ........................................ 40

Section 21F(c)(1), 15 U.S.C. § 78u-6(c)(1)(B)(i)(III) ...................................... 40

Section 21F(c)(2)(D), 15 U.S.C. § 78u-6(c)(2)(D) ...................................... 7, 46

Section 21F(f), 15 U.S.C. § 78u-6(f) ................................................ 3, 7, 26

Section 21F(h), 15 U.S.C. § 78u-6(h) ...................................................... 41

Section 21F(h)(1), 15 U.S.C. § 78u-6(h)(1) ............................................. 41

Section 21F(h)(2), 15 U.S.C. § 78u-6(h)(2) ............................................. 41

Section 21F(h)(2)(A), 15 U.S.C. § 78u-6(h)(2)(A) .................................... 5, 6

Section 21F(j), 15 U.S.C. § 78u-6(j) ..................................................... 7, 10

Section 36(a), 15 U.S.C. § 78mm(a) ........................... 21, 25, 30, 49, 51, 52

Section 36(a)(1), 15 U.S.C. § 78mm(a)(1) ...............................................50

31 U.S.C. § 3730(e)(4) ............................................................................ 39

26 U.S.C. § 7623(b)(2)(b) ....................................................................... 39

**Rules and Regulations**

Rules Under the Securities Exchange Act of 1934, 17 C.F.R. §§ 240.0-1, *et seq.*

17 C.F.R. 240.17a-4 ................................................................................ 18

17 C.F.R. § 240.21F-1 ..............................................................................4

17 C.F.R. § 240.21F-2 .............................................................................. 4

17 C.F.R. § 240.21F-2(a)(2) ................................................................. 8, 46

17 C.F.R. § 240.21F-3 ............................................................................. 4

17 C.F.R. § 240.21F-4 ............................................................................ 4,7

17 C.F.R. § 240.21F-4(b)(1) ..................................................................... 8

17 C.F.R. § 240.21F-4(b)(1)(ii) ................................................................ 9

17 C.F.R. § 240.21F-4(b)(5) ..................................................................... 9

17 C.F.R. § 240.21F-4(b)(7) ................................................................... 49

17 C.F.R. § 240.21F-4(c) ........................................... 10, 12, 13, 42, 44, 46

17 C.F.R. § 240.21F-4(c)(1) .............. 10, 12, 15, 16, 22, 23, 30, 42, 43, 45, 46, 49

17 C.F.R. § 240.21F-4(c)(2) ............................. 11, 12, 14, 15, 22, 30, 42, 43, 44

17 C.F.R. § 240.21F-4(c)(3) ............................................................ 11, 12, 49

17 C.F.R. § 240.21F-5 ............................................................................. 4

17 C.F.R. § 240.21F-6 ........................................................................... 4, 7

17 C.F.R. § 240.21F-7 ............................................................................ 4

17 C.F.R. § 240.21F-8 ............................................................................ 4

17 C.F.R. § 240.21F-9 ................................................................... 4, 8, 46

17 C.F.R. § 240.21F-9(a) ......................................................................... 7

17 C.F.R. § 240.21F-9(b) ......................................................................... 8

17 C.F.R. § 240.21F-10 .......................................................................... 4

17 C.F.R. § 240.21F-10(d) ..................................................................... 19

17 C.F.R. § 240.21F-11 .......................................................................... 4

17 C.F.R. § 240.21F-12 .......................................................................... 4

17 C.F.R. § 240.21F-13 .......................................................................... 4

17 C.F.R. § 240.21F-14 .......................................................................... 4

17 C.F.R. § 240.21F-15 .......................................................................... 4

17 C.F.R. § 240.21F-16 .......................................................................... 4

17 C.F.R. § 240.21F-17 .......................................................................... 4

17 C.F.R. § 240.21F-18 ..........................................................................4

## Other Authorities

S. Rep. No. 111-176 (2010) ................................................3, 4, 5, 16, 33

Pub. L. No. 111-203, 124 Stat. 1376 (2010) ........................................... 3

Sarbanes-Oxley Act § 307; 18 U.S.C. § 1514A(a) ........................... 6, 11

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE
INTERPRETATION OF LEGAL TEXTS 144 (2012) ......................................... 36

SEC DIVISION OF ENFORCEMENT, ENFORCEMENT MANUAL (Feb. 2026) .............. 49

## Commission Releases

*Securities Whistleblower Incentives and Protections, Rel. No. 34-64545,*
    76 FR 34300, 2011 WL 2293084 (Jun. 13, 2011)  7, 8, 10, 11, 13, 44, 45, 46, 48

*Matter of Robinhood Fin., L.L.C., Rel. No. 34-90694,*
    2020 WL 7482170 (Dec. 17, 2020) ............................................... 18

*Order Determining Whistleblower Award Claims, Rel. No. 34-94398,*
    2022 WL 768309 (Mar. 11, 2022) ................................... 15, 16, 23, 50

*Order Determining Whistleblower Award, Rel. No. 34-102987,*
2025 WL 1307887 (May 5, 2025) ......................... 12, 14, 15, 16, 24, 37, 43, 50

*Order Determining Whistleblower Awards*, *Rel. No. 34-82181,*
2017 WL 5969236 (Nov. 30, 2017) ............................................................. 14, 34

## PRELIMINARY STATEMENT

To incentivize the reporting of securities law violations to the Securities and Exchange Commission, Section 21F of the Securities Exchange Act of 1934 authorizes the payment of awards to certain individuals who qualify as "whistleblowers," as that term is defined under the statute. To be considered a "whistleblower" under the Exchange Act, an individual must "provide . . . Information relating to a violation of the securities laws to the Commission. 15 U.S.C. 78u-6(a)(6). And to be eligible for an award an Exchange Act "whistleblower" must have, among other things, "voluntarily provided original information to the Commission that led to the successful enforcement' of a Commission action. Id. at 78u-6(b)(1). Petitioner John Doe seeks review of a final order of the Commission denying his claim for such an award. But the record unambiguously demonstrates that by the time Doe submitted information to the Commission, and therefore became a whistleblower under the Act, the Commission's staff had already discovered his earlier online publication of that information and opened an investigation based on the alleged wrongdoing. As a result, Doe's whistleblower submission did not lead to a successful Commission enforcement action and his claim for an award was correctly denied.

Doe's argument that he should nonetheless have received an award because he was the original source of the information that the Commission discovered

online conflates two distinct statutory requirements. Where a claimant is the original source of information learned by the Commission through some other means, the information they provide can—in certain circumstances—still be considered "original information" under Section 21F. But the statute separately requires the information "provided" "to the Commission" to have "led to" a successful enforcement action. Without that causal connection, which the undisputed facts establish is lacking here, there is no entitlement to an award.

Doe also argues that the Commission should have exercised its statutory authority to excuse his failure to meet this statutory "led to" requirement. Doe, however, cannot meet the heavy burden of showing that the Commission abused its discretion in denying an exemption. The Commission explained that the "led to" requirement advances the whistleblower program's core objective—motivating reporting "to the Commission." Given its importance, the Commission reasonably concluded that waiving compliance with the requirement here was not in the public interest. The Commission further explained that it has treated others situated similarly to Doe in the same manner and reasonably determined that nothing about Doe's particular circumstances warranted a different outcome here.

The Commission's order should be affirmed.

## COUNTERSTATEMENT OF JURISDICTION

The Commission issued a final order denying Doe's claim on September 30,

2025. Denial Order at 1. Section 21F(f) of the Exchange Act authorizes this Court's review of such final orders. 15. U.S.C. 78u-6(f). Doe timely filed the petition for review on October 20, 2025. *See id.* (providing 30 days to file a petition for review).

## COUNTERSTATEMENT OF THE ISSUES

1.      Whether the Commission reasonably denied Doe's award claim because the record unambiguously demonstrated that his submission of information to the Commission did not lead to the successful Commission action for which he seeks an award.

2.      Whether the Commission reasonably declined to exercise its exemptive authority to excuse Doe from Section 21F's "led to" requirement, a core component of the whistleblower program established by Congress.

## COUNTERSTATEMENT OF THE CASE

**A.      Statutory and Regulatory Background**

**1.      Section 21F's Whistleblower Incentives and Protections**

In the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376 (2010), Congress established a whistleblower award program to motivate individuals with knowledge of securities law violations to alert and assist the Commission. *See* S. Rep. No. 111-176, at 110-12 (2010). Section 21F of the Exchange Act begins by defining a

"'whistleblower' as 'any individual who provides … information relating to a violation of the securities laws *to the Commission*, in a manner established, by rule or regulation, by the Commission." Exchange Act § 21F(a)(6) (emphasis added).[1] Thus, as the Supreme Court has explained, reporting to the Commission is a congressionally-imposed predicate to receipt of the benefits of the statute. *Digital Realty*, 583 U.S. 149, 160-62 (2018) (quoting Exchange Act § 21F(a)(6)).

As relevant here, Section 21F goes on to establish a tripartite scheme of incentives and protections for those who qualify as whistleblowers. First, whistleblowers who "voluntarily provid[e] original information to the Commission that le[ads] to the successful enforcement of [a] covered judicial or administrative action," Exchange Act § 21F(b)(1), are entitled to a monetary award. *Id.* 21F(b)(1)(A)–(B). The "core objective" of this provision is to "motivate people who know of securities law violations to tell the SEC." *Digital Realty*, 583 U.S. at 155, 162 (quoting S. Rep. No. 111-176, p. 38). As the Supreme Court has explained, "[b]y enlisting whistleblowers 'to assist the Government in identifying and prosecuting persons who have violated securities laws,' Congress undertook to improve SEC enforcement and facilitate the Commission's 'recovery of money for

---

[1]    The Commission's whistleblower statute is codified at 15 U.S.C. § 78u-6 and is referred to as Section 21F. The Commission's whistleblower rules are codified at 17 C.F.R. § 240.21F-1 through § 240.21F-18 and are referred to, respectively, as Rule 21F-1 through Rule 21F-18.

victims of financial fraud.'" *Id*. at 162. (quoting S. Rep. No. 111-176, p. 38) (cleaned up)).

Section 21F also provides employment retaliation protections that prohibit employers from discharging, harassing, or otherwise discriminating against a whistleblower "because of any lawful act done by the whistleblower" in: (1) "providing information to the Commission"; or (2) "initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to" the whistleblower's earlier submission to the Commission. *Digital Realty*, 583 U.S. at 156. To qualify for this anti-retaliation protection, an individual must "qualify as a 'whistleblower' at the time of the alleged retaliation." *Id.* at 163. As the Supreme Court also explained, the "award program and anti-retaliation provision thus work synchronously to motivate individuals with knowledge of illegal activity to '*tell the SEC*.'" *Id.* at 162 (quoting S. Rep. No. 111-176, p. 38) (emphasis added).

Additionally, Section 21F provides heightened confidentiality protections for individuals who qualify as whistleblowers by providing information to the Commission. Subject to certain narrow exceptions, Section 21F(h)(2)(A) directs that "the Commission and any officer or employee of the Commission shall not disclose any information, including information provided by a whistleblower to the Commission, which could reasonably be expected to reveal the identity of a

5

whistleblower[.]" Exchange Act § 21F(h)(2)(A).

All aspects of Section 21F thus focus on individuals who report to the SEC. This stands in marked contrast to another securities-law whistleblower regime, the one established in the Sarbanes-Oxley Act of 2002 (and codified at 18 U.S.C. § 1514A). That program has "a more far-reaching objective"—"to disturb the 'corporate code of silence' that 'discouraged employees from reporting fraudulent behavior'"—and so reaches not only SEC reporting, but reporting to "'the proper authorities, such as the FBI'[,] and "'even internally'" at public companies. *Digital Realty*, 583 U.S. at 162-63 (quoting *Lawson v. FMR LLC*, 571 U.S. 429, 435 (2014)).

## 2.     The Award Program

The general requirements of the award component of Congress's scheme are established by Section 21F(b)(1). In relevant part, that section provides that in any qualifying Commission enforcement action ("covered action"), "the Commission, under regulations prescribed by the Commission …, shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement" of the covered action. A covered action is defined as "any judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000." Exchange Act § 21F(a)(1). Section 21F(b)(1) also provides that the

"aggregate amount" paid to all meritorious whistleblowers for any covered or related action shall be between 10% and 30% "of what has been collected of the monetary sanctions imposed" in the covered or related action. But section 21F(c)(2)(D) states that "[n]o award … shall be made" to an individual "who fails to submit information to the Commission in such form as the Commission may, by rule, require."

Section 21F(f) provides that "[a]ny determination" made in connection with an award application, "including whether, to whom, or in what amount to make awards, shall be in the discretion of the Commission." And Section 21F(j) authorizes the Commission "to issue such rules and regulations as may be necessary or appropriate to implement the provisions" of Section 21F. Consistent with that authority, the Commission adopted certain eligibility criteria, terms and conditions, and award determination criteria. *See, e.g.*, Rules 21F-4 & 21F-6. The Commission also adopted various procedures that individuals must adhere to when submitting information to the Commission pursuant to the award program.[2]

---

[2] During the period relevant to this case, the Commission's rules provided that "[t]o be considered a whistleblower under Section 21F," an individual "must submit [his or her] information about a possible securities law violation" by submitting an electronic Form Tip, Complaint, or Referral on the Commission's webpage or "mailing or faxing a Form TCR … to the SEC Office of the Whistleblower[.]" *Securities Whistleblower Incentives and Protections*, 76 F.R. 34,300, at 34,368/1-2 (June 13, 2011) ("*2011 Whistleblower Release*") (setting forth the then-operative version of Exchange Act Rule 21F-9(a)). The rules further

### a. Original Information and the Original-Source Exception

To potentially qualify for an award, Section 21F "requires whistleblower submissions to the SEC to contain 'original information.'" *Ross v. SEC*, 34 F.4th 1114, 1119 (D.C. Cir. 2022). Section 21F(a)(3) defines "original information" to constitute "information that—

(A) is derived from the independent knowledge or analysis of a whistleblower;

(B) is not known to the Commission from any other source, unless the whistleblower is the original source of the information; and

(C) is not exclusively derived from an allegation in a judicial or administrative hearing, in a government report, hearing, audit, or investigation, or from the news media, unless the whistleblower is a source of the information.

Pursuant to its rulemaking authority under Section 21F, the Commission adopted Rule 21F-4(b)(1), which clarifies that "[i]n order for [a] whistleblower submission

---

provided that "[t]o be eligible for an award," the individual "must declare under penalty of perjury at the time [the individual] submit[s] [his or her] information … that [the individual's] information is true and correct to the best of [his or her] knowledge and belief." *2011 Whistleblower Release*, 76 F.R. at 34,368/2 (setting forth the then-operative version of Exchange Act Rule 21F-9(b)); *see also 2011 Whistleblower Release*, 76 F.R. at 34363/3 (setting forth the then-operative version of Exchange Act Rule 21F-2(a)(2), which provided that "[t]o be eligible for an award," an individual "must submit original information to the Commission in accordance with the procedures" of Rule 21F-9).

to be considered original information," it must satisfy each of the three prongs of the statutory definition.

Generally speaking, the first and third prongs focus on the whistleblower's acquisition of the information; these prongs restrict a whistleblower from simply conveying information from the public domain for which the whistleblower has no personal, independent knowledge. The second prong, by contrast, evaluates the information from the perspective of the Commission; it requires a whistleblower to provide the Commission with information that was previously unknown to the agency. But this prong includes an exception pursuant to which the information that a whistleblower submits can still be deemed to contain original information even though the Commission already knows that information if the whistleblower was "the original source of the information" ("original-source exception"). Exchange Act § 21F(a)(3)(B); Rule 21F-4(b)(1)(ii).

Although Section 21F does not define "original source," Rule 21F-4(b)(5) does so. The rule explains that "[t]he Commission will consider you to be an original source of the same information that we obtain from another source if the information satisfies the definition of original information and the other source obtained the information from you or your representative." *Id.*; *see generally Meisel v. SEC*, 97 F.4th 755, 765 (11h Cir. 2024) (discussing the original-source exception).

9

### b.    "Led to the Successful Enforcement" of an Action

Even if a whistleblower satisfies the "original information" requirement (either by providing new information to the Commission or by being an "original source" whistleblower who provides information the Commission already knew), Section 21F(b)(1) separately requires that the provision of the "original information to the Commission" have "led to" a successful enforcement action. The Commission, using its express rulemaking authority under Section 21F(j), adopted Rule 21F-4(c) to describe the three circumstances when an individual's provision of information will meet this requirement.  As the Commission explained when it adopted this rule, "a whistleblower is *only* entitled to an award if one of [these] three general standards is satisfied."  *2011 Whistleblower Release*, 76 F.R. at 34,357/1 n.438.

Two of the permissible situations under Rule 21F-4(c) focus on a whistleblower's provision of information directly to the Commission.  Under Rule 21F-4(c)(1), "[t]he Commission will consider that [a whistleblower] provided original information that led to" a successful enforcement action if the whistleblower "gave the Commission original information that was sufficiently specific, credible, and timely to cause the staff to … open an investigation … and the Commission brought a successful … action based in whole or in part on conduct that was the subject of [the whistleblower's] original information."  And

under Rule 21F-4(c)(2), if the whistleblower "gave the Commission original information about conduct that was already under … investigation[,]" the Commission will still consider the whistleblower to have "provided original information that led to the successful enforcement" of an action if the whistleblower's "submission significantly contributed to the success of the action[.]"

The third situation that can satisfy the "led to" requirement concerns reports initially made to internal compliance programs. To help ensure that the whistleblower program does not undermine systems for internal reporting of potential misconduct, Rule 21F-4(c)(3) provides a limited accommodation under which an individual's "reporting internally" could use an alternative "potential path to an award." *2011 Whistleblower Release*, 76 F.R. at 34,325/1-3; *see generally id.* at 34,323/1 (explaining that the Commission in implementing the whistleblower program is "not seeking to undermine effective company processes for receiving reports on possible violations").[3]

Under that rule, the Commission "will consider that [a whistleblower] provided original information that led to the successful action" if: (1) the

---

[3] Various provisions of the federal securities laws are designed to encourage, and in some instances to require, internal reporting of potential misconduct. *See, e.g.*, Exchange Act §§ 10A(b) & 10A(m)(4); Sarbanes-Oxley Act § 307; 18 U.S.C. § 1514A(a).

individual made a report "through an entity's internal whistleblower, legal, or compliance procedures for reporting allegations of possible violations of law before or at the same time [the individual] reported to the Commission"; (2) "the entity later provided [the individual's] information to the Commission, or provided results of an audit or investigation initiated in whole or in part in response to information [the individual] reported to the entity"; and (3) "the information the entity provided to the Commission satisfies" Rule 21F-4(c)(1)—*e.g.*, by causing the staff to open an investigation—or Rule 21F-4(c)(2)—*e.g.*, by significantly contributing to an ongoing Commission investigation. *See* Rule 21F-4(c)(3). In addition, the individual must have "submit[ted] the same information to the Commission in accordance with the procedures set forth in [Rule] 21F-9 within 120 days of providing it to the entity." *Id*. The Commission has explained that Rule 21F-4(c) does not allow an indirect chain of causation "beyond the narrow context of reporting to an internal compliance program" under Rule 21F-4(c)(3). *Order Determining Whistleblower Award*, Whistleblower Award Proceeding File No. 2025-27, 2025 WL 1307887, at *6 n.5 (May 5, 2025) ("*May 2025 Order*").

> **c.** **Interplay of the Original-Source Exception and the "Led to" Requirement**

At the time the Commission adopted its "original source" and "led to" rules, it also addressed the interaction of the two requirements and made clear that an

original-source's submission to the Commission must still satisfy the "led to" requirement. As the Commission explained, "if B makes a whistleblower submission based upon information obtained from A, and A later makes his or her own submission of that information, then A will be considered the 'original source' of the information[.]" *2011 Whistleblower Release*, 76 F.R. at 34,321/3. "[B]oth submissions could qualify as 'original information.'" *Id.* at 34,321/3. But each whistleblower's submission must satisfy the separate "led to" requirement under Rule 21F-4(c). *See 2011 Whistleblower Release*, 76 F.R. at 34,321/3-34,322/1.

The Commission explained that "by virtue of being first-in-time, B may have an advantage over A." *Id.* at 34,321. "If B's submission . . . caused us to open an investigation, and if a successful enforcement action resulted, then [the Commission] would consider whether B's submission 'led to' [the] successful action under the lower standard set forth in Rule 21F-4(c)(1)." *2011 Whistleblower Release*, 76 F.R. at 34,321/1-34,322/2. But A's "original source" status would not eliminate A's obligation to establish that A's submission to the Commission "led to" the action's success. "[I]f A made his or her submission after [the Commission was] investigating the matter that B brought to [the agency], then A's information would be evaluated under Rule 21F-4(c)(2)[.]" *2011 Whistleblower Release*, 76 F.R. at 34,322/1. Thus, "A would have to meet the

13

additional requirement that his or her information 'significantly contributed' to the success of the action." *Id.*

Moreover, the Commission has provided various examples of situations in which an original source might satisfy Rule 21F-4(c)(2).  For example, a whistleblower who is an original source: (i) "might have first-hand knowledge and thus be able to provide particularly compelling testimony at trial"; or (ii) "could be someone that the Commission is unaware of or could not reach, and whose involvement with the investigation could lead wrongdoers to agree to a settlement." *Order Determining Whistleblower Awards*, Whistleblower Award Proceeding File No. 2018-2, 2017 WL 5969236, at \*6 n.22 (Nov. 30, 2017).

The Commission also addressed the interaction of the original-source exception and the "led to" requirement in a final order last year, the *May 2025 Order*. The Commission again explained that, whether or not information is deemed "original" because of a claimant's status as the original source, the claimant's submission to the Commission must still satisfy the separate statutory "led to" requirement.  *May 2025 Order*, at \*3.[4]  The "led to" clause in Section 21F(b)(1) requires a causal connection between the whistleblower's provision of original information and the success of the enforcement action.  Under the

---

[4]     Page citations are to the Westlaw version (available at 2025 WL 1307887).

Commission rules implementing that requirement, then, an original source's submission to the Commission must cause staff to open an investigation or examination or otherwise significantly contribute to the success of the action. *See May 2025 Order*, at *3; *see also* Rules 21F-4(c)(1) & (2). Thus, even if a claimant is the original source of information, and that information ultimately prompted the staff's investigation or contributed to the Commission's action, "it must have been the information that was provided 'to the Commission'" by the claimant "that led to the successful enforcement of the Covered Action." *Id*.

In explaining this interaction, the Commission disavowed the conflicting reasoning in a 2022 whistleblower order. *See Order Determining Whistleblower Award Claims*, Rel. 34-94398, 2022 WL 768309 (Mar. 11, 2022) (the "*2022 Order*"). In the *2022 Order*, the Commission addressed a claim in which the claimant had posted information online and then emailed the information to Commission staff three days later. Although it was staff's discovery of the online report (and not the claimant's subsequent submission to the Commission) that prompted the opening of the successful investigation, the Commission deemed Rule 21F-4(c)(1) satisfied. *Id*. at *4. In doing so, the Commission reasoned that

the claimant "was an original source of the [online] report" and "[t]he investigation

was opened based on the information in the report." *Id.*[5]

But in the *May 2025 Order*, the Commission "disavow[ed]" the conclusion

of the *2022 Order*. *May 2025 Order*, at *8. The Commission explained that

requiring the claimant's submission of information to the Commission—rather

than just the information itself, as provided to a third party—to play a causal role

in the successful action was "a more natural reading" of the relevant provisions.

The Commission also explained that the approach of the *2022 Order* "would

reduce the statutory requirement that the information be provided 'to the

Commission' to a ministerial step" and "sever that chain of causation by granting

award eligibility whenever the Enforcement staff opens an investigation based on

publicly available information for which an individual was the 'original source,'

even if that individual's submission to the Commission at a later date bore no

---

[5]     On appeal of the *2022 Order* by a different claimant, the Third Circuit criticized its reasoning as "leav[ing] something to be desired," noting a prior case in which the Commission required (and the Second Circuit affirmed) that a whistleblower's tip itself must satisfy the "led to" requirement. *Doe v. SEC*, 2023 WL 3562977, at *3 n.3 (3d Cir. Mar. 23, 2023) (citing *Kilgour*, 942 F.3d 113, 123(2d. Cir. 2019)). The Commission acknowledged this criticism in the *May 2025* Order.

causal connection to the opening of the investigation." *May 2025 Order*, at *3, *7.[6]

## B.      Factual and Procedural Background

### 1.      SEC staff opened an examination and investigation into Robinhood based on public reports, including reports published by Doe.

In April 2018, Commission Examinations staff opened an examination into Robinhood Financial, LLC ("the Company"), looking at the Company's practices regarding best execution, payment for order flow, order routing, and financial reporting.  SEC-RE-16.[7]  The examination was opened as a result of several prior examinations of wholesale market makers that the Company interacted with, as well as media attention and discussion among Commission staff regarding the Company's business model.  SEC-RE-14.

---

[6]      Referencing the hypothetical in the adopting release, the *May 2025 Order* explained that "on [the claimant's] reading, even if A made his or her submission to the Commission long after the Enforcement staff opened the investigation, both A and B could satisfy Rule 21F-4(c)(1) *based solely on B's earlier submission to the Commission of information for which A was an "original source."'" May 2025 Order*, at *4-5 (emphasis added).  But the Commission explained that such a result would disserve Congress's "core objective" of motivating individuals who know of securities law violations to promptly tell the SEC.  *Id.* at *4 (quoting *Digital Realty*, 583 U.S. at 162 (quoting S. Rep. No. 111-176, at 38)).

[7]      "SEC-RE-__" refers to the Commission's Record Excerpts.

On September 10, 2018, Doe—a self-described "financial journalist and analyst"—published an online article alleging misconduct by the Company. SEC-RE-11. Enforcement staff found the article on its own initiative and, on September 14, 2018, opened an investigation to determine whether the Company had violated the securities laws. SEC-RE-10-11. Around the same time, enforcement staff learned about the ongoing examination. SEC-RE-11.

Approximately 36 days after publishing his article, on October, 16, 2018, Doe submitted a tip to the Commission. SEC-RE-12. Staff received the tip two days later. SEC-RE-12. As later described in a staff declaration, while the tip contained some new information beyond what the staff already knew, that information did not advance the already-ongoing investigation. SEC-RE-12. Other than the submission of the tip, staff did not have any communication with Doe. SEC-RE-12. And, while Doe published another article regarding Robinhood on October 18, 2018, staff does not recall receiving that article and the information in it was not helpful in the investigation. SEC-RE-12 & 14.

On December 17, 2020, the Commission instituted settled administrative and cease-and-desist proceedings against the Company concerning violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933 as well as Section 17(a) of the Exchange Act and Rule 17a-4 thereunder. *In the Matter of Robinhood Financial, LLC*, Admin. Proc. File No. 3-20171, 2020 WL 7482170 (Dec. 17,

2020) (the "Covered Action"). These violations stemmed from material misrepresentations and omissions relating to: (1) the Company's revenue sources, specifically its receipt of payments from certain principal trading firms, also known as electronic market makers, for routing customer orders to them; and (2) certain statements about the execution quality the Company achieved for its customers' orders. SEC-RE-10. The Covered Action also concerned the Company's failure to satisfy its duty of best execution. SEC-RE-10. Among other relief, the Commission ordered the Company to pay $65 million in monetary sanctions. SEC-RE-10.

## 2. Doe filed an award application that was preliminarily denied by Commission staff.

In April 2021, Doe timely filed an application for an award in connection with the Covered Action. Denial Order at 2. The application described the "journalistic labor" that Doe employed to investigate potential securities-law violations by the Company and noted his September 10, 2018, publication of "the results of his investigation." SEC-RE-1, 5; *see also* SEC-RE-6.

According to Doe, his article "quickly ignited a series of journalistic and social media reports" regarding the Company's behavior (SEC-RE-2) and the Company "soon issued a rebuttal in the form of a press release" as a result of "the controversy generated by [Doe's] reporting" (SEC-RE-3). Doe explained that he

19

then filed his tip with the Commission because the "false statements" and "evasions" in the Company's press release "removed any remaining doubt in [Doe's] mind regarding the company's guilt[.]" SEC-RE-3. Doe stated that "he gave the company a single chance to respond to his allegations, and then filed his [tip] after the company issued an evasive and unconvincing rebuttal." SEC-RE-7.

The Claims Review Staff—the committee of SEC staff members responsible for making preliminary award determinations, *see* Rule 21F-10(d)—preliminarily denied Doe's claim. The preliminary denial explained that Doe's October 16, 2018, "submission of information [to the Commission] did not lead to the success of the Covered Action within the meaning of Exchange Act Section 21F(b)(1) and Rules 21F-3(a) and 21F-4(c)[.]" SEC-RE-8. It further explained that Doe "did not alert" Commission staff "to the information contained in [his] article." SEC-RE-9. Instead, "Division of Enforcement staff found the publicly available … article on their own initiative" and opened the investigation on September 14, 2018. SEC-RE-9; *see* Br. 18.[8] Because there was "no causal connection between the opening of the investigation and [Doe's] submission of information to the Commission, [Doe] cannot satisfy the requirements of Rule 21F-4(c)(1)." SEC-RE-9.

---

[8] "Br." refers to Doe's opening brief.

The preliminary denial also explained that Doe's "submission of information did not significantly contribute to the success of the Covered Action as required under Rule 21F-4(c)(2)." SEC-RE-9. Doe's submission "did not advance the investigation because by the time [Doe] submitted the TCR to the Commission, the staff was already aware of the bulk of the information in the TCR based on its own investigative efforts." SEC-RE-9. Indeed, the preliminary denial explained that "[m]uch of the staff's investigatory steps were taken based upon information developed from other sources," including a "referral to the Division of Enforcement from the [SEC's] Division of Examinations." SEC-RE-9, n.4.

### 3.   The Commission denied Doe's reconsideration request.

Doe submitted a timely request for reconsideration (including a declaration) in response to the preliminary denial. Denial at 1. Doe explained that he was aware of the Commission's whistleblower program when he published his article in September 2018. SEC-RE-16; *see also* SEC-RE-5. Doe represented that he nonetheless "ultimately concluded that the best way to get everyone's attention— the Commission, [the Company], and the investor community—was to go public with his findings." SEC-RE-15.

In denying Doe's reconsideration request, the Commission concluded that Doe's "information did not lead to the successful enforcement of the Covered Action." Denial Order at 6. The Commission explained that "Rule 21F-4(c)(1)

and (c)(2) specify that [Section 21F's] 'led to' requirement is satisfied if either '*you gave* the Commission original information that … caused the staff to ... open an investigation' or '*you gave* the Commission original information about conduct that was already under examination or investigation by the Commission … and your submission significantly contributed to the success of the action.'" Denial Order at 6 (cleaned up) (emphases in original).

Relying on sworn declarations from two Commission staff members involved with the Commission's inquiry into the Company, the Commission concluded that "[t]he record supports the conclusion that [Doe] does not satisfy Rule 21F-4(c)." Denial Order at 7. In pertinent part, the Commission explained that: "because [Doe] did not provide information *to the Commission* that caused the opening of the [i]nvestigation," he did "not satisfy Rule 21F-4(c)(1)"; and "because [Doe] did not provide the Commission with any information that significantly contributed to the success of the Covered Action"—given that the information he submitted on October 16, 2018, "was either already known to the [s]taff or was not otherwise helpful to the [i]nvestigation"—Doe did "not satisfy Rule 21F-4(c)(2)." Denial Order at 7-8.

The Commission rejected Doe's contention that he satisfied Rule 21F-4(c)(1)'s "led to" standard because he was the original source of the information the Commission discovered online and used to open the investigation. The Denial

Order emphasized the statutory requirement that a whistleblower must have "voluntarily provided original information to the Commission that led to the successful enforcement of the covered . . . action." Denial Order at 9. And the order explained that both this "statutory 'led to' requirement" and Rules 21F-4(c)(1) and (c)(2) require that "a claimant's *submission of information to the Commission* prove helpful to Enforcement staff in the relevant covered action." Denial Order at 8. The "first two paragraphs of the 'led to' rule focus on causation"—*i.e.*, the effect on the success of a covered action resulting from "the whistleblower's submission to the Commission of original information[.]" Denial Order at 9.

Doe's "proposed interpretation of Rule 21F-4(c)(1) would sever the chain of causation by granting award eligibility whenever the Enforcement staff opens an investigation based on publicly available information, even if the individual's submission to the Commission at a later date bore no causal connection to the opening of the investigation." Denial Order at 9. As the Denial Order explained, Doe's "reading would reduce the statutory requirement that the information be provided 'to the Commission' to a ministerial step" that would lack any "independent substantive (causal) connection" between what the whistleblower actually provides to the Commission and the action's success; this is not "what Congress intended when Congress enacted the 'led to' requirement in Section

21F(b)(1), nor does it seem the better reading of the statute." Denial Order at 9.

Additionally, the Denial Order reiterated the Commission's consistent view that

"Rule 21F-4(c) provides the only mechanisms by which a claimant can satisfy the

'led to' requirement." Denial Order 10, n.20. The Denial Order also noted Doe's

reliance on the *2022 Order* in seeking reconsideration, but reiterated that the

Commission's *May 2025 Order* disavowed that prior order. Denial Order at 8-9, n.

16.

In addition to finding Doe ineligible for an award, the Commission rejected

his request for an exemption from the "led to" requirement. *See* Denial Order at

11-12. The Commission acknowledged its discretionary authority under Section

36(a) of the Exchange Act to exempt individuals from statutory or regulatory

requirements where doing so is "necessary or appropriate in the public interest, and

is consistent with the protection of investors." Denial Order at 11. And the

Commission observed that, "[i]n whistleblower matters, [it] has found that the

public interest warranted an exemption from a rule requirement in a limited

number of cases where the unique circumstances of the particular matter raised

considerations substantially different from those which had been considered at the

time the rules were adopted, and a strict application of the rules would result in

undue hardship, unfairness, or inequity." Denial Order at 11.

But the Commission explained that the use of its exemptive authority "to excuse a claimant's failure to report information to the Commission in a timely manner would be contrary to the underlying purpose of the Commission's whistleblower program," which is "to encourage persons with information about potential securities violations to report such information *to the Commission.*" Denial Order at 11. The Commission also observed that it has declined to exercise its exemptive authority for similarly situated claimants who, like Doe, "went public with their information before providing such information to the Commission." Denial Order at 12. A denial here would therefore "not result in any unfair burden" on Doe. Denial Order at 12. And the Commission explained that Doe's request for an exemption was not aided by his citation to "other [award] matters in which [the Commission] invoked its Section 36(a) exemptive authority to waive certain procedural requirements under the Rules"; those matters were inapposite because none involved an exemption from the statutory "led to" requirement. Denial Order at 13, n.25.

Moreover, the Commission found that "[n]one of [Doe's] arguments about why the Commission should exercise its … discretionary [exemptive] authority change this conclusion." Denial Order at 11. Though the Commission acknowledged Doe's contentions about his "relative youth" and lack "of counsel advising" him when he published his information, it found that "other aspects of

the record" demonstrated that Doe "was not unsophisticated"—*e.g.*, he was an "experienced trader," "[f]inancial [j]ournalist," and author of a "book related to finance" who was aware of the Commission's whistleblower program before he published his article online. Denial Order at 11, 12. At bottom, the Commission explained that "[r]egardless of a particular claimant's unique circumstances—including those that [Doe] has raised—we see no unfairness in concluding that a claimant who voluntarily publishes an article online before submitting information to the Commission should generally bear the risk that Enforcement staff may learn that information before the staff receives the claimant's submission itself." Denial Order at 12.

## STANDARD OF REVIEW

Whistleblower award decisions "shall be in the discretion of the Commission." Exchange Act § 21F(f). The Commission's conclusions of law are generally reviewed *de novo*, *Tobar v. Garland*, 65 F.4th 195, 198 (5th Cir. 2023), and courts are not constrained by the interpretive analysis in an agency's order, *see, e.g.*, *Bank of America, N.A. v. F.D.I.C.*, 244 F.3d 1309, 1319 (11th Cir. 2001) (citing cases).

All other determinations are reviewed under the arbitrary-and-capricious standard, which requires that the challenged "agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423

(2021). "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.* "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.* And an agency decision will be upheld "even if it is 'of less than ideal clarity,' so long as 'the agency's path may reasonably be discerned.'" *Sierra Club v. Dept. of Interior*, 990 F.3d 909, 913 (5th Cir. 2021) (quoting *Motor Vehicle Mfrs. Assn. v State Farm Mutual Auto. Ins.*, 463 U.S. 29, 43 (1983)).

Finally, judicial review of a denial of an exemption or waiver under the federal securities laws is "highly deferential." *AMSE, LLC v. SEC*, 826 F.3d 1017, 1021 (8th Cir. 2016) (quoting *Copley Fund, Inc. v. SEC*, 796 F.3d 131, 135 (D.C. Cir. 2015)). The denial will be "set aside … only if the agency's reasons are so insubstantial as to render that denial an abuse of discretion." *AMSE*, 826 F.3d at 1021 (quoting *Copley Fund*, 796 F.3d at 135).

## SUMMARY OF ARGUMENT

The Denial Order should be affirmed. The dispositive facts are not in dispute. The Commission opened the investigation that resulted in the Covered Action in September 2018 after discovering information that Doe had published online; and Doe's subsequent whistleblower submission to the Commission did not help with the staff's ongoing efforts—the Commission already knew the bulk of

27

the information and the rest was unhelpful.

Because Doe's submission therefore did not lead to the success of the Covered Action, the Commission correctly denied Doe's award claim. In doing so, the Commission properly construed the Exchange Act. Section 21F(b)(1) provides for payment of awards to "*whistleblowers* who voluntarily *provided* original information *to the Commission* that led to the successful enforcement of the covered" action. *Id.* § 21F(b)(1) (emphasis added). The most natural reading of this language requires a causal sequence of events tracking the text of the statute: an individual must first become a "whistleblower" by providing information to the Commission in the manner the rules require; the submission must be voluntarily made and the information provided must be original; and the "original information" "provided" "to the Commission" must lead to the success of a covered action. This reading is consistent with the normal operation of the whistleblower program when an individual provides the Commission with original information that was not previously known to the agency: *i.e.,* an individual first becomes a whistleblower by providing the agency with previously unknown original information, and if that information leads to a successful enforcement action, then the individual may qualify for an award. It also serves Congress's "core purpose" by incentivizing whistleblowers to bring information to the Commission.

28

Doe errs in contending that the statute should be read to dispense with this normal sequence of events when an "original source" provides the Commission with information that the agency already knows. The original-source provision serves as an exception to the ordinary application of the statutory requirement that a whistleblower provide "original information." Exchange Action § 21F(a)(3)(B). It does not alter the application of the distinct "led to" requirement.

Nor can Doe's reading be squared with the text of Section 21F(b)(1), which requires that the provision of "original information" by a "whistleblower" "to the Commission" lead to a successful enforcement action. When an original source publishes information online before submitting it to the Commission, as Doe did: the original source does not become a "whistleblower" under Section 21F, which requires submission of information to the Commission in the manner required by the Commission's rules; and, thus, the information itself cannot qualify as "original information," which by definition is information derived from the "knowledge or analysis *of a whistleblower*." *Id.* § 21F(a)(3)(A) (emphasis added). It is therefore axiomatic that the Commission's use of online information to open an investigation cannot suffice to meet the statutory requirements.

Moreover, Doe's reading is inconsistent with the statutory design. Numerous provisions in Section 21F make clear that the submission of information to the Commission is a critical substantive feature of the whistleblower program,

not (as Doe would have it) an after-the-fact ministerial function designed primarily for an individual to perfect their status as a whistleblower. And Doe's reading also conflicts with the principle that exceptions are read narrowly in textual construction, a principle that has particular force in this instance given that the original-source exception relates not to the "led to" requirement, but to an entirely different substantive requirement.

Doe's interpretation is also at odds with Section 21F's "core objective" of motivating individuals to promptly provide actionable information to the Commission. His reading would require payments to people who chose *not* to tip the Commission until after the Commission happened to find the information on its own and built a successful case, instead using the information for other purposes.

Commission Rules 21F-4(c)(1) and (c)(2) mirror and implement Section 21F's "led to" requirement. And a natural reading of both rules confirms that the focus is on the requisite causal connection between the "original information" the whistleblower "gave the Commission" and the success of the Commission's enforcement action.

Finally, the Commission reasonably denied Doe's request for an exemption under Section 36(a) of the Exchange Act. The Commission explained that the "led to" requirement is so central to the whistleblower program that it would not be in the public interest to waive that requirement under the circumstances presented.

Denying an exemption to advance a core statutory goal is not an abuse of discretion and Doe cannot demonstrate otherwise.

## ARGUMENT

Doe does not contest the Commission's factual findings relating to his ineligibility for a whistleblower award. It is undisputed that shortly after Doe published his information online, the staff discovered it and opened the investigation that resulted in the Covered Action. It is also undisputed that, "after opening the [i]nvestigation," the staff's "investigatory steps … were taken based upon information developed from other sources[.]" Denial Order at 8. As a result, when Doe belatedly became a whistleblower by providing information to the Commission, that information did not assist the staff's efforts. It "was either already known to [s]taff or was not otherwise helpful to the [i]nvestigation." Denial Order at 8.

With the relevant facts undisputed, Doe's challenge to the Commission's denial of his claim centers on the proper interpretation of Section 21F and the rules thereunder. But well-established principles of textual interpretation confirm that both Section 21F and the Commission's whistleblower rules require that a whistleblower's provision of information *to the Commission* must lead to the success of a covered action. And the Commission acted well within its broad discretion in declining to waive the "led to" requirement in the circumstances of

31

this case.  Denial Order at 11.

## I.    Doe's whistleblower submission did not lead to the success of the Covered Action.

Textual interpretation is a "holistic endeavor," *United Sav. Assoc. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988), and courts should not "look at a word or phrase in isolation," *United States v. Palomares*, 52 F.4th 640, 642-43 (5th Cir. 2022).  Thus, this Court "reads words 'in their context,' interpreting the statute 'as a symmetrical and coherent regulatory scheme,' and 'fitting, if possible, all the statute's parts into a harmonious whole.'"  *Southwestern Electric Power Co. v. EPA*, 920 F.3d 999, 1023-24 (5th Cir. 2019) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)) (cleaned up); *see also Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) (stating that "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute").  Moreover, exceptions in a statute are construed narrowly to preserve the statute's primary operation.  *See, e.g.*, *Marachich v. Spears*, 570 U.S. 48, 60 (2013) (stating that exceptions are "usually read" narrowly and "ought not operate to the farthest reach of their linguistic possibilities if that result would contravene the statutory design"); *Comm'r of IRS v. Clark*, 489 U.S. 726, 739 (1989) (similar).  Application of these principles here makes clear that the Commission correctly interpreted Section 21F

and its rules thereunder.

**A.    Under Section 21F, a whistleblower's submission to the Commission must have "led to" the success of a covered action.**

Section 21F(b)(1) of the Exchange Act directs that the Commission "shall" grant awards to "whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement" of a covered action.  As the Second Circuit has recognized, the statute's plain text thus "seems to require that the information as provided by the whistleblower must have 'led to the successful enforcement action.'" *Kilgour,* 942 F.3d at 122.

This natural, commonsense reading of Section 21F(b)(1) tracks the sequence of events set out in the statute: the provision of original information must be made *to the Commission* (thereby qualifying the individual as a whistleblower), and that provision of information *to the Commission* must have helped bring about—*i.e.*, "led to"—the Commission's successful enforcement action. See Exchange Act § 21F(b)(1).  This reading also aligns with "the core objective" of the SEC's whistleblower program which, as the Supreme Court has explained, is "'to motivate people who know of securities law violations to *tell the SEC*." *Digital Realty*, 583 U.S. at 162 (quoting S. Rep. No. 111-176, at 38) (cleaned up).

The logic of this sequence is demonstrated in the more typical situation when an individual provides the Commission with previously unknown original

information.  In that circumstance, the individual, by making a submission to the Commission in the manner required by the rules, becomes a "whistleblower" under Section 21F(a)(6).  And if that information is provided voluntarily, then the individual can become eligible for an award if the staff uses the information the whistleblower submitted to pursue a successful covered action.  This is precisely what Congress intended—whistleblowers providing the Commission with actionable information that assists the agency's law-enforcement efforts.

This common-sense reading of the text applies equally when an individual is an original source who provides the Commission with information that it already knows from another source.  Section 21F(a)(3)'s "original source" provision provides a limited exception to the definition of "original information," allowing the information the whistleblower provided to the Commission to still qualify as "original information" notwithstanding the Commission's prior awareness if a whistleblower is the "original source of [the] information."  Id. § 21F(a)(3).  This exception ensures that original sources continue to have an incentive to become SEC whistleblowers—even when they are aware the Commission already knows their information.  *See generally Order Determining Whistleblower Awards*, 2017 WL 5969236 (discussing the Commission's objectives when "crafting the original-

34

source exception").[9]

But that exception does not impact the "led to" requirement or change the requisite sequence of events: if the Commission discovered an original source's information and used it to open an investigation *before* the original source provided the information to the Commission, he or she is not eligible for an award. Like other claimants, an original source must still establish that the information he provided to the Commission *as a whistleblower* "led to" a successful covered action. After all, Section 21F establishes a whistleblower award program, not an original-source award program.

## B. Doe's contrary reading is inconsistent with the statute's text, design, and purpose.

Doe nonetheless contends (at 43) that Section 21F(b)(1) "focuses on whether … 'original information' led to the successful" action—regardless of whether the

---

[9] Doe erroneously appears to suggest (at 39) that the limited exception at the end of Section 21F(a)(3)(C) may have some application here. Section 21F(a)(3)(C) provides that "'original information' means information that is not exclusively *derived* from an allegation made in a judicial or administrative hearing, in a governmental report, hearing, audit, or investigation, or from the news media, *unless the whistleblower is a source of the information*" ("whistleblower-source clause"). *Id.* (emphases added). By its plain terms, the whistleblower-source clause provides a limited exception to permit a whistleblower to "*derive[]*" their "original information" from allegations in the news media (and the other listed items) if they are a "source of the information" for the publicly available allegations. Nothing about that language, however, concerns situations where the Commission already knows information.

person had provided that information to the Commission beforehand. This interpretation not only contradicts the plain meaning of the statute but would lead to absurd results.

Doe first bases his unnatural reading on the assertion that "the word 'that'" preceding "led to" refers "to the noun phrase 'original information.'" Br. 43. But this ignores that "original information," in turn, is the object of "provided … to the Commission," meaning that it must be the information an individual provided to the SEC—not information published elsewhere—that caused the successful result. Had Congress intended to make tipping the Commission irrelevant, it could have granted awards to whistleblowers "whose information led to a successful Commission action." Yet Congress did not do so, choosing instead to condition eligibility on whether it was the information "provided … to the Commission" that "led to" the action. Exchange Act § 21F(b)(1).[10]

Doe also ignores the fact that, in another provision of Section 21F, the "led to" clause modifies a noun phrase that clearly refers to "the original information" *as provided by the whistleblower*. Specifically, Section 21F(a)(5)'s definition of a

---

[10] Doe's reliance on the "nearest reasonable antecedent" canon (at 28-29) is misplaced, whether applied to the rules or statute, as it concerns which of two noun phrases is referenced by a pronoun. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 144 (2012).

"related action" (which can also be the basis for whistleblower awards) states in relevant part "the original information provided by a whistleblower … that led to the successful enforcement of the Commission action." The "that led to" adjective clause in Section 21F(a)(5) modifies the noun phrase "the original information provided by a whistleblower," which is fully consistent with the Commission's interpretation of the statute's text.[11]

Doe's reading would also reduce the "provided … to the Commission" requirement to an insignificant, "ministerial step", unnecessarily requiring the whistleblower at some point to send the Commission the same information SEC staff already found on its own. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (cleaned up)). Doe argues that even belated, duplicative submissions can help staff track, manage, and assess the reliability of information (at 38-39), but that argument falls apart the further the submission is made from the initiation of the investigation. Under his reading,

---

[11] As discussed above, Section 21F was enacted as part of the Dodd-Frank Act and it is not uncommon for such massive statutes to have instances of inartful drafting. *See generally Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 320 (2014) (Scalia, J.) (observing that the statutory text in a large, complex act may not be "a chef d'oeuvre of legislative draftsmanship").

nothing would prevent individuals from contacting the Commission for the first time years after the investigation begins—or even after the enforcement action is over—contending that they were the original source behind documents that the Commission found on its own years earlier. *See May 2025 Order*, at \*8 (it would "open the door to abusive tactics" if "an individual were permitted to wait until the Commission publicly filed its enforcement action before coming forward as the alleged 'original source' for a news story that long ago prompted the staff's investigation").

Such a result would make a mockery of Section 21F(b)(1)'s "provided … to the Commission" language and Congress's "core objective" of motivating people to "tell the SEC" about potential violations. *Digital Realty*, 583 U.S. at 162. And it cannot be what Congress could have intended. *See generally Atchison v. Collins Shell Offshore, Inc. v. Tesla Offshore*, LLC, 905 F.3d 915, 921 (5th Cir. 2018) (stating that this Court "will avoid interpreting a statute to produce absurd results if alternative interpretations consistent with the legislative purpose are available" (cleaned up)).

Doe next points to the statute's "original source" provisions, arguing that they support his reading of the statute. Br. 43-44. But the original-source exception in the "original information" definition does not, *sub silentio*, so profoundly alter the "led to" requirement.

*First*, any information originating from an original source cannot qualify as "original information" until that original source becomes a whistleblower. Section 21F(a)(3)(A) provides that original information means "information that is derived from the independent knowledge or analysis *of a whistleblower*." *Id.* (emphasis added). This aligns with the sequential manner in which Section 21F is designed to operate: an individual must first qualify as a whistleblower by providing information to the SEC, and only upon doing so can the individual's information obtain "original information" status for purposes of the whistleblower award program. Thus, when an original source such as Doe publishes information online before becoming an SEC whistleblower, the information in the publication is not "original information" under Section 21F. And so, contrary to Doe's contention (at 10, 24), the information the Commission discovered (and used) was not original information as defined by the statute.[12]

---

[12] Certain of the *amici* supporting Doe seek to compare Section 21F(a)(3)(B)'s original-source exception to original-source provisions in the False Claims Act, 31 U.S.C. § 3730(e)(4), and the Internal Revenue Service whistleblower statute, 26 U.S.C. § 7623(b)(2)(B). The relevant language in those statutes provides no guidance here because of the significantly different—and broader—context in which that language appears in the statutes. Specifically, the original-source exceptions in those statutes are *not* part of an original-information definition that, among other things, narrows the potential application of the original-source exception *only* to information that is derived from the independent knowledge or analysis "*of a whistleblower*" (as the term is defined in Section 21F(a)(6)). *See generally Russello v. United States*, 464 U.S. 16, 25 (1983) ("Language in one

*Second*, the clause in Section 21F(a)(3)(B) allowing an original-source whistleblower to provide information already known to the Commission is an exception to the general requirement that a whistleblower must provide information that "is not known to the Commission from any other source[.]" *Id.* Exceptions to statutory provisions are to be construed narrowly. *See, e.g., Marachich*, 570 U.S. at 60; *Clark*, 489 U.S. at 739. That principle of construction has particular force in this context because the original-source exception relates *only* to the original-information requirement, not the separate requirement that the information provided "to the Commission" must have "led to" a successful action. Accordingly, the original-source exception should not be construed broadly, as Doe seeks, to reduce the requirement of providing information "to the Commission" to an after-the-fact ministerial task that has no causal connection to the success of the action.

*Third*, Section 21F's overall structure demonstrates that the provision of information to the Commission is a central (and predominant) component of the award program. This is apparent both from the statutory whistleblower definition already discussed, which requires an individual to "provide[] information … to the Commission," Section 21F(a)(6), and the express statutory bar in Section

---

statute usually sheds little light upon the meaning of different language in another statute[.]").

21F(b)(2)(D) on the Commission making an award to any individual "who fails to submit information to the Commission in such form as" its rules require. It is further confirmed by the fact that two of the statutory award factors that Section 21F directs the Commission to consider in setting award amounts expressly reference the provision of information to the Commission. One factor directs the consideration of "the significance of the *information provided by the whistleblower*" to the success of the action, and the other factor requires consideration of the "programmatic interest" in making awards "to *whistleblowers who provide information that leads to* the successful enforcement" of Commission actions. Exchange Act § 21F(c)(1)(B)(i)(I) & (III) (emphases added). And no award factor focuses on the information a claimant may disclose to the public, only the information that a whistleblower "provide[s]" as that term is understood throughout Section 21F—*i.e.*, "to the Commission" in the specific manner required by the agency's rules.

Doe's interpretation is also belied by the Supreme Court's holding in *Digital Realty*, which confirmed that reporting to the Commission is the required first step for individuals seeking to bring themselves within Section 21F's whistleblower regime. Section 21F(h)(1) affords individuals employment protection for specified acts of retaliation that occur, but *only* after becoming SEC whistleblowers. *See Digital Realty*, 583 U.S. at 163 (holding that respondent "did not provide

information 'to the Commission' before his termination, so he did not qualify as a 'whistleblower' at the time of the alleged retaliation" and "is therefore ineligible to seek relief" under Section 21F(h)) (internal citation omitted). Similarly, the heightened confidentiality protections under Section 21F(h)(2) apply only to individuals once they have obtained whistleblower status by providing information to the Commission in the specific manner required by the Commission's rules.

\* \* \*

As the forgoing demonstrates, the Commission correctly concluded that Doe did not satisfy Section 21F's "led to" requirement. His submission of information to the Commission bore no causal connection to the staff's opening of the investigation, nor did it have any value as the staff proceeded forward to an eventual successful covered action.

## C. Under Rule 21F-4(c)(1), a whistleblower's submission must also have led to the success of the covered action.

Rather than arguing about the plain meaning of the governing statutory provision, Section 21F(b)(1), Doe spends the bulk of his brief attempting to parse the Commission's rules in his favor. But as with a statute, in construing a regulation, this Court "give[s] effect to the natural and plain meaning of the regulation's words," *TNT Crane & Rigging, Inc. v. OSHA*, 74 F.4th 347, 353 (5th

Cir. 2023),[13] "constru[ing]" those regulations "in light of the statute" they "implement[]," *United States v. Marte*, 356 F.3d 1336, 1341 (11th Cir. 2004). And the relevant regulatory text confirms that a whistleblower's submission of information to the Commission must lead to the success of a covered action.

The first two provisions of Rule 21F-4(c) implement Section 21F's "led to" requirement and, by their plain terms, focus on the causal impact that a whistleblower's submission of information "to the Commission" has on a covered action. In pertinent part, Rules 21F(c)(1) and (c)(2) both specify that the "Commission will consider that you provided original information that led to" a successful action if either "*[y]ou gave the Commission* original information that … cause[d] the staff to … open an investigation," Rule 21F-4(c)(1) (emphasis added), or "*[y]ou gave the Commission* original information about conduct that was already under … investigation … and your submission significantly contributed to the success of the action," Rule 21F-4(c)(2) (emphasis added). The natural, common-sense reading of these rules is that both evaluate whether and to what extent a whistleblower's submission of original information to the Commission caused or benefited the Commission's investigation and enforcement action. *See*

---

[13] Under the circumstances of this case, the Commission is not requesting that this Court afford *Auer* deference to its interpretation of Rule 21F-4(c)(1). *See generally Kisor v. Wilkie*, 588 U.S. 558 (2019).

*May 2025 Order*, at \*8.  And, as discussed above, it is undisputed that Doe's

belated whistleblower submission did not have any impact whatsoever on the

staff's investigatory efforts.

Doe nonetheless believes that he qualifies under Rule 21F(c)(1), challenging

the Commission's focus on whether a whistleblower's submission (rather than

their information) "led to" an action's success because Rule 21F-4(c)(1)—unlike

Rule 21F-4(c)(2)—makes no mention of a whistleblower's "submission."  Br. at

24-25, 31.  But Doe's proposed (and unnatural) reading lacks any plausible

foundation in the regulatory scheme.  Doe (here again) erroneously supposes that

the information the Commission discovered online was original information, but

because Doe was not a whistleblower when he published his article, it was not.

*See supra at* p. 39.

Additionally, Doe never acknowledges that his proposed interpretation is

inconsistent with the Commission's description of the interplay of the original-

source exception and Rule 21F-4(c) when it adopted those rules.  *See Wy. Outdoor

Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999) (explaining that a

regulation's preamble offers "evidence of an agency's contemporaneous

understanding of its proposed rules"); *see also Gujarat Fluorochemicals Ltd. v.

United States*, 153 F.4th 1376, 1382 n.6 (Fed. Cir. 2025) (similar); *Watkins v. City*

44

*of Montgomery*, 775 F.3d 1280, 1284 (11th Cir. 2014) (similar).[14] As the Commission demonstrated through the example involving hypothetical whistleblowers A and B, an original source who delays providing information to the Commission until the agency has already opened an investigation after receiving that information through some other means will face the "*additional requirement*" of demonstrating that his or her subsequent submission "significantly contributed" to the ongoing investigation under Rule 21F-4(c)(2); the original source would not be credited for the opening of investigation under Rule 21F(c)(1) just because the staff was using the information before the original source provided it to the Commission. *2011 Whistleblower Release*, 76 F.R. at * 34,322/1.

Further, Doe's example of the baseball coach illustrates how unnatural his reading of Rule 21F-4(c)(1) is. In Doe's telling, a father says to the coach, "I will pay you $500 if you give my son a baseball bat that is sufficiently light and powerful to cause him to hit a homerun." Br. 30. The most natural reading of this

---

[14] "Although not binding authority, the preamble, much like the 'rulings, interpretations and opinions" of an agency, 'constitute [s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Little David Coal Co. v. Director, Office of Workers' Compensation Programs*, 532 Fed. Appx. 633, 636 (2012) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

offer is that the coach must give the son the bat before he hits the home run, as the father is paying the coach for his help in choosing a "light and powerful" bat that subsequently causes that result. This interpretation becomes even more obvious when removing ownership of a reusable bat from the equation, making the situation more analogous to single-use information about a securities violation. Imagine that it is the son's last game at an age level permitting a metal bat, making it useful for only one more plate appearance. Imagine as well that the coach then ignores the boy entirely, but the boy pulls a random "bat out of the coach's bat bag" and hits a home run. Br. 30. No one would fault the father for refusing to pay the coach $500 if the coach tossed the now-useless bat to the son after the game and said, "here, now I gave you a home run-hitting bat," because the coach played no role in causing the home run.

Citing dictionary definitions, Doe erroneously contends (at 41) that "[e]ven if Rule 21F-4(c)(1) were interpreted to require the whistleblower to 'give' the original information to the Commission before it opens an investigation," he "did that here" when he published his article. Beyond the absurdity of contending that he gave something "to the Commission" by publishing it online, this contention ignores that the Commission's rules specify the procedures that a whistleblower must follow when providing original information to the Commission. *See, e.g.,* *2011 Whistleblower Release*, 76 F.R. at 34,363/3 (setting forth the version of Rule

21F-2(a)(2) that was in effect in 2018: "To be eligible for an award, you must submit original information to the Commission in accordance with the procedures … described in … Rule 21F-9"); *see also 2011 Whistleblower Release*, 76. F.R. at 34,368/1-2 (setting forth the version of Rule 21F-9 that was in effect in 2018). *See generally Sackett v. EPA*, 598 U.S. 651, 676 (2023) (explaining that "construing statutory language is not merely an exercise in ascertaining the outer limits of a word's definitional possibilities," especially where "only one … meaning produces a substantive effect that is compatible with the rest of the law" (cleaned up)). And it also ignores Section 21F(c)(2)(D)'s prohibition on the Commission making awards to individuals who fail to provide information in the manner required by Commission rules. *See generally Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 474-75 (5th Cir. 2009) (stating that "any inconsistency between the statutory language and the language contained in the regulations must be resolved in favor of the statute").

Lastly, Doe contends (at 45) that even if his claim does not satisfy Rule 21F-4(c), the provisions of that rule are not the exclusive means by which an individual can establish Section 21F's "led to" requirement. The D.C. Circuit, however, has already rejected that contention. *See Doe v. SEC*, 28 F.4th 1306, 1313-14 (D.C. Cir. 2022) (*per curiam*). Moreover, the Commission confirmed at the time Rule 21F-4(c) was adopted that its provisions are the exclusive circumstances that

satisfy the "led to" requirement, *see 2011 Whistleblower Release*, 76 F.R. at

34,357/1 n.438, and this is reflected in the agency's "consistent practice" since the

rule was adopted, Denial Order at 10, n.20.  Regardless, the contention has no

relevance to this matter because (as discussed above, *see supra* Part I(A)) Doe's

award claim fails under the statute.

> **D.  Doe's policy arguments are misguided and, in any event, cannot override the text of Section 21F and the Commission's rules.**

Doe next raises a host of policy arguments to establish his award eligibility,

but none can overcome the straightforward interpretation of the statute's text.  *See*

*generally Universal Health Services, Inc. v. United States*, 579 U.S. 176, 192

(2016) ("policy arguments cannot supersede the clear statutory text").

Doe first asserts (at 3) that "Congress would never have created a program

that disincentivizes whistleblowers from going public[,]" but the Commission's

interpretation of the "led to" requirement does no such thing.  "Nothing in the

statute or rules prevented him from doing both at the same time or telling the

Commission first, and then [publishing it]." *Doe v. SEC*, __ F.4th __, __, 2026

WL 1191372, at *6 (D.C. Cir. May 1, 2026).  But given that "[t]he Commission's

whistleblower program was designed to encourage persons with information about

potential securities violations to report such information *to the Commission*"

(Denial Order at 11), an individual "who voluntarily publishes an article online

before submitting information to the Commission" will assume "the risk that Enforcement staff may learn that information before" that individual makes a whistleblower submission."[15]  Denial Order at 12.

Doe next speculates (at 35) that under the Commission's interpretation a whistleblower who reported to the Commission before going public could still become ineligible if the staff becomes aware of the alleged wrongdoing through media coverage of the whistleblower's public disclosures.  Any risk of this occurring is ameliorated by the fact that the Division of Enforcement protocols direct that Enforcement staff, before opening an investigation, to search the Commission's Tips, Complaints and Referrals database to determine if whistleblowers have provided any information that may be relevant to the determination to commence an investigation.  *See* SEC DIVISION OF ENFORCEMENT, ENFORCEMENT MANUAL (Feb. 2026), at 2-5 ("Staff should search [the TCR System] … before making material decisions about a matter, including whether to open a [matter under inquiry] or investigation[.]").  And failing that, the Commission has exemptive authority under Section 36(a) of the Exchange Act that would be available as a safety valve where a whistleblower, before going public,

---

[15]     Contrary to Doe's suggestion (at 33), a public announcement about a potential securities-law violation can in some instances have detrimental impacts, especially by putting the wrongdoers on notice before the Commission can take action. *See, e.g.*, *2011 Whistleblower Release*, F.R. at 34,326/1-2.

had timely provided information "to the Commission" in accordance with the statutory design (which Doe did not, *see* Argument Part II, *infra*).

Doe also contends (at 25) that, under his interpretation of Section 21F and Rule 21F-4(c)(1), the obligation to provide information "to the Commission" could still have value. As he sees it, the submission could serve "as an evidentiary source" for the agency to use at the award processing stage "to determine whether the whistleblower's original information led to" the successful action. Br. 25. But if that were the principal purpose for the requirement in Rule 21F-4(c)(1) to give the information to the Commission, surely the Commission would have imposed a timing requirement for when the submission must occur to ensure it would have genuine evidentiary value. *Cf.* Rule 21F-4(b)(7) (establishing a 120-day period to file a form TCR); Rule 21F-4(c)(3) (same). Yet there is no timing requirement, undermining Doe's proposed reading of the rule.

Finally, Doe appears to assert (at 37-38) that the Commission should not have disavowed the approach that it followed in the *2022 Order* in which the Commission made an award to "a claimant who emailed his report to the Enforcement staff three days after posting it online, even though it was the staff's discovery of the online report and not its [subsequent] receipt of the email that prompted the opening of the successful investigation." *May 2025 Order*, at *6, *8. Yet Doe fails to acknowledge that an agency can change its position so long as it

acknowledges the change and explains its reasons for the change. *See, e.g.*, *Encino Motorcars, LLC v. Narvarro*, 579 U.S. 211, 221 (2106); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). That is precisely what the Commission did; it expressly acknowledged that it was rejecting the approach in the *2022 Order* "in favor of a more natural reading [of Rule 21F-4(c)(1)] which harmonizes [the rule] with the 'led to' language of Section 21F(b)(1)." *May 2025 Order*, at *7. Nothing more was required.

## II. The Commission acted within its broad discretion in denying Doe's request for an exemption.

Under Section 36(a)(1) of the Exchange Act, the Commission "*may* conditionally or unconditionally exempt persons" from any Exchange Act "provision …, rule or regulation" if the Commission determines "that such exemption is necessary or appropriate in the public interest, and is consistent with the protection of investors." *Id.* (emphasis added). Exemptions are highly discretionary under this provision. *See generally Terre Haute & Indianapolis R.R. Co. v. State of Indiana ex rel. Ketcham*, 194 U.S. 579, 588 (1904) ("The word 'may' … is permissive, not mandatory."). Moreover, "[w]hile an agency must consider the relevant factors in explaining the denial of a waiver request, the agency is not required to author an essay for the disposition of each application. It suffices, in the usual case, that [a reviewing court] can discern the why and

wherefore." *BellSouth Corp. v. FCC*, 162 F.3d 1215, 1224 (D.C. Cir. 1999) (cleaned up).

The Commission reasonably explained why it declined to exempt Doe from the requirement that a whistleblower submission must have "led to" the successful covered action. The whistleblower program "was designed to encourage persons with information about potential securities violations to report such information *to the Commission*" and, thus, "[u]sing Section 36(a) to excuse a claimant's failure to report information to the Commission in a timely manner would be contrary to the underlying purpose of the … program." Denial Order at 11. The Commission also explained that this determination "is consistent with many other matters that the Commission has decided in recent years," including several matters "within the past few months" in which exemptions were denied "for claimants similarly situated" to Doe. Denial Order at 12, n.25.

Doe cannot establish that the Commission's reasons for denying an exemption "are so insubstantial as to render the denial an abuse of discretion." *Copley Fund*, 796 F.3d at 135 (quoting *Universal City Studios LLLP v. Peters*, 402 F.3d 1238, 1242 (D.C. Cir. 2005)). As a threshold matter, Doe consistently mischaracterizes the "led to" requirement as a procedural matter imposed by the Commission's rules, but it is a statutory requirement, *see* Denial Order at 12. *See also id.* (explaining that the "'led to' requirement is not a mere technicality"

52

imposed by the Commission's rules, but a substantive requirement that emanates from "Congress's statutory design"). Thus, contrary to Doe's contention (at 49), his failure to satisfy this core requirement is not an instance of a "whistleblower[] who did everything right" but is being "punished for procedural foot faults."

Doe similarly falters in his attempt to establish that the Commission acted inconsistently in denying him an exemption. None of the matters that he identifies involved an exemption from the "led to" requirement. Denial Order at 11, n.25. Rather, those matters involved procedural requirements that the rules imposed. *See, e.g.*, *Barr v. SEC*, 114 F.4th 441, 453 (5th Cir. 2024) (finding unpersuasive a petitioner's reliance on a prior Commission order that granted an exemption "from a regulatory, not statutory requirement," where the petitioner's request involved a requirement imposed by Section 21F).

Doe also erroneously contends that the Commission failed to consider Section 36(a)'s "public interest" and "investor protection" factors. But the Commission's denial rested on its conclusion that an exemption in this matter would not be in the public interest. The Commission's public-interest inquiry reasonably focused on whether granting an exemption would align with Section 21F's core objective—incentivizing whistleblowers to provide actionable information about potential securities-law violations to the Commission. Denial Order at 11; *see generally Business Roundtable v. SEC*, 905 F.2d 406, 412 (D.C.

Cir. 1990) (explaining that statutory references to the "public interest" "must be limited to 'the purposes Congress had in mind when it enacted the legislation'" (quoting *NAACP v. FPC*, 425 U.S. 662, 670 (1976)). Denying an exemption to an individual such as Doe who "voluntarily publishes an article online before submitting information to the Commission" reinforces Section 21F's core purpose by making plain that anyone who delays in this manner will "bear the risk that the Enforcement staff may learn that information before the staff receives the claimant's submission itself." Denial Order at 12.

Doe's remaining contentions fare no better. Relying on *API v. SEC*, 953 F. Supp. 2d 5 (D.D.C. 2013), he argues (at 51-52) that the Commission erroneously relied on the "importance of [the] 'led to' requirement in declining to use its exemptive authority." But that decision is inapposite. There, the Commission relied "on the blanket proposition that avoiding *all exemptions* best furthers [a statutory provision's] purposes." *API*, 953 F. Supp. 2d. at 22 (emphasis added). That is not the case here; the Commission has in appropriate instances granted exemptions in connection with the whistleblower program, as Doe acknowledges. *Cf. Barr*, 114 F.4th at 453 (observing that the Commission "did not take the position that it was statutorily precluded from exercising its exemptive authority"). Rather, the Commission made the targeted determination that Doe's decision to "voluntarily" publish the information online before coming to the Commission

contravened the expectation of timely reporting that is central to Section 21F. *See also API*, 953 F. Supp. 2d at 22 (explaining that the Commission can deny an exemption when it determines that strict adherence in particular circumstances is "sufficiently central to [the statutory provision's purpose] to make an exemption unwarranted"); *see generally Universal City Studies*, 402 F.3d at 1242 ("An agency's strict construction of a general rule in the face of waiver requests is insufficient evidence of an abuse of discretion.").

Doe appears (at 50) to fault the Commission for concluding that he "was not unsophisticated," but he does not actually challenge the finding. He also ignores the fact that the Commission was responding to his own argument before the agency that he should receive an exemption given his status as an unrepresented college student when he published his information online. *See* Denial Order at 11. And lastly, Doe identifies (at 50) the Company's lack of "publicly available procedures for reporting allegations of possible violations of the law" which, he claims, precluded him from making a report that could comply with Rule 21F-4(c)(3), *see supra* at pp. 11-12. But Doe does not explain why that should excuse his failure to report "to the Commission" before publishing the information online.

\*　　\*　　\*

The Commission's determination to deny Doe an exemption was reasonable and reasonably explained, resting on a carefully tailored explanation tied to the

public interest embodied in Section 21F to motivate individuals to provide the

Commission promptly with actionable information about potential securities-law

violations.

## CONCLUSION

Doe's petition should be denied.

Respectfully submitted,

J. RUSSELL McGRANAHAN
General Counsel

JEFFREY R. JOHNSON
Solicitor

TRACEY A. HARDIN
Associate General Counsel

/s/ *William K. Shirey*
WILLIAM K. SHIREY
Senior Appellate Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-5043 (Shirey)

UNDER SEAL

**CERTIFICATE OF SERVICE**

I certify that on May 6, 2026, I electronically filed the foregoing Brief of the Securities and Exchange Commission, Respondent, with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the Court's appellate CM/ECF system. Further, I certify that I electronically served counsel for petitioner Doe using email and the CM/ECF system.

/s/ *William K. Shirey*
William K. Shirey

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains approximately 11,401 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface—Times New Roman, 14 point—using Microsoft Word 365.

_/s/ William K. Shirey_
William K. Shirey

May 6, 2026