No. 25-60572

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

JOHN DOE,

*Petitioner*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent*,

On Petition for Review of an Order of the United States Securities and Exchange Commission, Release No. 34-104137; File No. 2025-56

## REPLY BRIEF OF PETITIONER JOHN DOE

Jordan A. Thomas
SEC Whistleblower Advocates PLLC
3101 Wilson Boulevard, Suite 500
Arlington, VA 22201
(202) 746-9314
JThomas@secadvocates.com

J. Michael Connolly
  *Counsel of Record*
Steven C. Begakis
Peter J. Allevato
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com
peter@consovoymccarthy.com

May 27, 2026

*Counsel for Petitioner*

## CERTIFICATE OF INTERESTED PERSONS

*Sealed Petitioner v. Sealed Respondent*, No. 25-60572

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court can evaluate possible disqualification or recusal:

| **Petitioner** | **Counsel for Petitioner:** |
|---|---|
| Logan C. Kane (John Doe) | J. Michael Connolly |
| | *Counsel of Record* |
| | Cameron T. Norris |
| | Steven C. Begakis |
| | Peter J. Allevato |
| | Consovoy McCarthy, PLLC |
| | 1600 Wilson Blvd., Suite 700 |
| | Arlington, VA 22209 |
| | (703) 243-9423 |
| | |
| | Jordan A. Thomas |
| | SEC Whistleblower Advocates PLLC |
| | 3033 Wilson Boulevard, Suite 700 |
| | Arlington, Virginia 22201 |
| | (212) 907-0836 |
| | JThomas@secadvocates.com |
| **Defendant**: | **Counsel for Defendant**: |
| United States Securities and Exchange Commission | Emily True Parise |
| | William Kenneth Shirey |
| | Jeffrey Finnell |
| | Tracey E. Hardin |
| | Securities and Exchange Commission |
| | 100 F Street, N.E. |
| | Washington, D.C. 20549-9040 |
| | (202) 551-5167 |

  */s/ J. Michael Connolly*
J. Michael Connolly

i

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS .............................................................i

TABLE OF CONTENTS .........................................................................................ii

TABLE OF AUTHORITIES ...................................................................................iii

INTRODUCTION ...................................................................................................1

ARGUMENT ...........................................................................................................3

I.    Kane's original information "led to" the Commission's successful enforcement action. ..................................................................................................................3

II.   The Commission improperly denied Kane an exemption. ...................................... 23

CONCLUSION ..................................................................................................... 26

CERTIFICATE OF COMPLIANCE........................................................................ 27

CERTIFICATE OF SERVICE................................................................................ 27

## TABLE OF AUTHORITIES

**Cases**

*Adams v. All Coast, LLC,*
15 F.4th 365 (5th Cir. 2021) ........................................................................... 22

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) ........................................................................................ 13

*BNSF Ry. Co. v. Fed. R.R. Admin.,*
62 F.4th 905 (5th Cir. 2023) ........................................................................... 24

*Cboe Futures Exch., LLC v. SEC,*
77 F.4th 971 (D.C. Cir. 2023) ......................................................................... 24

*Chevron v. NRDC,*
457 U.S. 837 (1984) ........................................................................................ 16

*Christensen v. Harris County,*
529 U.S. 576 (2000) ...........................................................................................9

*Cooper Indus., Inc. v. Aviall Servs., Inc.,*
543 U.S. 157 (2004) ........................................................................................ 11

*Digit. Realty Tr., Inc. v. Somers,*
583 U.S. 149 (2018) ............................................................................14, 18, 19

*Doe v. SEC,*
--- F.4th ---, 2026 WL 1191372 (D.C. Cir. Apr. 17, 2026) .....................24, 26

*Doe v. SEC,*
28 F.4th 1306 (D.C. Cir. 2022) ....................................................................... 23

*Doe v. SEC,*
No. 25-13647 (11th Cir. Apr. 24, 2026) .......................................................... 10

*Encino Motorcars, LLC v. Navarro,*
584 U.S. 79 (2018) .......................................................................................... 11

*Gas Transmission Nw. Corp. v. FERC,*
363 F.3d 500 (D.C. Cir. 2004) ........................................................................ 24

*Kilgour v. SEC,*
942 F.3d 113 (2d Cir. 2019) ........................................................................... 16

*Kuba v. Disney Fin. Servs., LLC,*
623 F. Supp. 3d 1290 (M.D. Fla. 2022) .......................................................... 19

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ........................................................................................ 16

*Louisiana v. U.S. Dep't of Energy,*
90 F.4th 461 (5th Cir. 2024) ............................................................ 10

*Meisel v. SEC,*
97 F.4th 755 (11th Cir. 2024) ........................................................ 3, 6

*NFIB v. Sebelius,*
567 U.S. 519 (2012) ............................................................................5

*Nielsen v. Preap,*
586 U.S. 392 (2019) ............................................................................4

*Peabody Twentymile Mining, LLC v. Sec'y of Lab.,*
931 F.3d 992 (10th Cir. 2019) ...........................................................7

*SEC v. Cap. Gains Rsch. Bureau,*
375 U.S. 180 (1963) ......................................................................... 13

*Texas Educ. Agency v. U.S. Dep't of Educ.,*
908 F.3d 127 (5th Cir. 2018) ....................................................... 7, 11

*Texas v. U.S. EPA,*
137 F.4th 353 (5th Cir. 2025) ............................................................3

*United States v. Moss,*
872 F.3d 304 (5th Cir. 2017) .............................................................3

**Statutes**

15 U.S.C. §78mm ............................................................................ 23

15 U.S.C. §78u-6 ......................................................................passim

26 U.S.C. §7623 .........................................................................20, 21

31 U.S.C. §3730 .............................................................................. 20

**Rules**

17 C.F.R. §240.21F-3 ..................................................................... 19

17 C.F.R. §240.21F-4 ...............................................................passim

17 C.F.R. §240.21F-6 ..................................................................... 25

**Regulations**

*Securities Whistleblower Incentives and Protections,*
76 Fed. Reg. 34300 (June 13, 2011) .............................................. 8, 25

**Other Authorities**

Bryan A. Garner, *Garner's Modern American Usage* (3d ed. 2009) ..................................... 19

*Order Determining Whistleblower Award Claims*,
   2022 WL 768309 (Mar. 11, 2022) ...........................................................................7

*Order Determining Whistleblower Award Claims*,
   2023 WL 2771173 (Mar. 31, 2023) ....................................................................... 16

*Order Determining Whistleblower Award Claims*,
   2025 WL 2778779 (Sep. 29, 2025) ....................................................................... 11

S. Rep. 111-176 (2010) ................................................................................................ 23

*The SEC Can Further Strengthen the Tips, Complaints, and Referrals Program*, Rep. No. 566
   (Feb. 24, 2021) ....................................................................................................... 13

## INTRODUCTION

The Commission denied Kane a whistleblower award because he "did not satisfy Rule 21F-4(c)(1)." Ex.7, Order, 10. So one would think that the Commission would devote its brief to defending that decision. But it doesn't. The Commission instead focuses almost entirely on a textual interpretation of the *statute*, brushing aside whether Kane's original information "led to" the successful enforcement action under the Commission's rules.

Why the reversal? Because Kane correctly interprets the Commission's rules. The Commission all but concedes that Kane's reading comports with proper grammar. The Commission has no explanation for why the Court should read the word "submission" into Rule 21F-4(c)(1), when that word occurs prominently (and only) in Rule 21F-4(c)(2). And the Commission admits that just a few years ago it adopted *the same reading* of Rule 21F-4(c)(1) that Kane has here.

The Commission's new focus on the statute raises its own problems. The Commission argues that the Exchange Act imposes a rigid cause-and-effect mechanism, where "a whistleblower's *submission* to the Commission *must* have 'led to' the success of a covered action." SEC-Br.33 (emphasis added). But that reading would nullify other parts of the statute and the rules. Under the statute's "original source" provisions, a whistleblower can receive an award even if the information is already "known to the Commission from [another] source" so long as "the whistleblower is the original source of the information." 15 U.S.C. §78u-6(a)(3)(B). But if a whistleblower cannot satisfy the

"led to" requirement unless his "submission" causes the successful enforcement action, then the "original source" rule would be useless—the whistleblower's submission will never lead to the enforcement action because the Commission will already know the information. So too for Rule 21F-4(c)(3), which says that the "led to" requirement can be met even when the Commission first learns about the whistleblower's information from the offending entity. The Commission has no explanation for how these provisions can coexist with its interpretation of Section 21F(b)(1). And its new argument—that it never had "original information" because Kane wasn't a whistleblower when he went public—is forfeited and has the same textual problems as its other arguments regardless.

The Commission's defense of its exemption denial is equally inconsistent. To justify the absurd consequences of its reading of Rule 21F-4(c)(1), the Commission promises to use its exemption power to waive the "led to" requirement in deserving cases. Yet in the next breath, the Commission insists that the "led to" requirement is an essential statutory requirement that shouldn't be waived. Which is it? If anyone deserves an exemption, it is an unrepresented college student who helped investors and the Commission by disclosing malfeasance and prompting an internal investigation and who complied with the rules as the Commission used to interpret them.

In the end, this case remains straightforward. Kane's "original information" led to the successful action against Robinhood, and Kane voluntarily gave this information to the Commission. Nothing more was required. Kane is entitled to an award.

## ARGUMENT

### I.  Kane's original information "led to" the Commission's successful enforcement action.

**1.** The Commission starts with a curious reversal. According to the Commission, what matters isn't whether Kane satisfies the "led to" requirement in Rule 21F-4(c)(1); it is whether Kane satisfies the "led to" requirement in Section 21F(b)(1) of the Exchange Act. SEC-Br.32-41; *id.* 42 (criticizing Kane for "pars[ing] the Commission's rules"). But this argument has it backwards. Congress instructed the Commission to issue awards pursuant to "regulations prescribed by the Commission." 15 U.S.C. §78u-6(b)(1). If Kane satisfies Rule 21F-4(c)(1), then he is entitled to a whistleblower award—full stop. *See, e.g., Meisel v. SEC*, 97 F.4th 755, 758 (11th Cir. 2024) ("[A] whistleblower is entitled to an award … if one of the Rule 21F-4(c) standards is satisfied."). The Court "interprets regulations in the same manner as statutes," *United States v. Moss*, 872 F.3d 304, 308 (5th Cir. 2017), examining "'the text, structure, history, and purpose of a regulation,'" *Texas v. U.S. EPA*, 137 F.4th 353, 371 (5th Cir. 2025). Indeed, the Commission's entire analysis below concerned whether Kane satisfied the requirements of the rules, not the statute. *See* Ex.7, Order, 6-10; *see, e.g., id.* 10 (rejecting "[Kane's] proposed interpretation of our Rules" and concluding that Kane "did not satisfy Rule 21F-4(c)(1)"). The Commission's flip-flop reveals its lack of confidence in its own rules.

To be sure, the underlying statute is relevant. *See* Pet-Br.42-45; *infra* 15-20. Kane's reading of Rule 21F-4(c)(1) is consistent with Section 21F, which also focuses on whether a whistleblower's "original information"—not his "submission"—leads to a

successful enforcement. Pet-Br.43. And if a whistleblower does not satisfy one of the three requirements of the Rules, then the statute provides an *additional* way to satisfy the "led to" requirement because Rule 21F-4(c) is not exhaustive. *See* Pet-Br.44-45. But the Commission's apparent argument—that the Court should start with the statute and ignore the Commission's rules—is obviously wrong. Regardless, Kane satisfies the "led to" requirement in Section 21F(b)(1) as well. *See* Pet-Br.42-45; *infra* 15-17.

**2.** The Commission all but concedes that the rules of grammar favor Kane's reading of Rule 21F-4(c)(1). *See Nielsen v. Preap*, 586 U.S. 392, 408 (2019) ("[T]he 'rules of grammar' govern statutory interpretation 'unless they contradict legislative intent or purpose.'"). Rule 21F-4(c)(1) states that a whistleblower's original information "led to" a successful enforcement action if the whistleblower "gave the Commission original information that was sufficiently specific, credible, and timely to cause the staff to," among other things, "open an investigation." 17 C.F.R. §240.21F-4(c)(1). As explained, the word "that" creates a restrictive relative clause that modifies "original information." *See* Pet-Br.28-29. The "original information"—not the act of giving it—must be "sufficiently specific, credible, and timely to cause the staff to" open the investigation. *See* Pet-Br.29-30. Because Kane's original information caused the Commission to open an investigation and he gave this information to the Commission, he satisfies the rule. Pet-Br.15-20, 27-28. Tellingly, the Commission never addresses this grammatical reading of Rule 21F-4(c)(1). *See* SEC-Br.41-48.

4

Even more problematic for the Commission is the presence of Rule 21F-4(c)(2), which says that the "led to" requirement is satisfied if "[y]ou gave the Commission original information … *and your submission* significantly contributed to the success of the action." 17 C.F.R. §240.21F-4(c)(2) (emphasis added); *see* Pet-Br.31. The Commission has no explanation—none—for why the word "submission" is used in Rule 21F-4(c)(2) but is conspicuously absent in Rule 21F-4(c)(1). SEC-Br.44. The Commission simply asserts that both provisions evaluate the effect of "a whistleblower's submission of original information to the Commission" because they use the phrase "you gave." SEC-Br.43. But this assertion ignores the clear differences between the two provisions. By using "certain language in one part of" Rule 21F-4(c)(1) and "different language in" Rule 21F-4(c)(2)—*the very next provision* in the rules—the Commission undeniably "act[ed] intentionally." *NFIB v. Sebelius*, 567 U.S. 519, 544 (2012). One provision depends on the whistleblower's "submission" of information (Rule 21F-4(c)(2)); and the other one doesn't (Rule 21F-4(c)(1)); *see also* Pet-Br.9-11.

The Commission's reading would also hollow out the "original source" provisions in the rules and the statute. Under these provisions, a whistleblower's information is "original information" even if it is already "known to the Commission from any other source" so long as the whistleblower is "the original source of the information." 17 C.F.R. §240.21F-4(b)(1)(ii), (b)(5); *see* 15 U.S.C. §78u-6(a)(3) (same). The "original source" rule "essentially says that if a whistleblower submits information to the Commission and the Commission had already heard the information from

someone else, the whistleblower is nevertheless entitled to an award if he [was] the original source of the information that the Commission had already heard elsewhere." *Meisel*, 97 F.4th at 765; *see* Nat'l-Whistleblower-Br.26-28; TAF-Coalition-Br.7-13. That is exactly the scenario before this Court now.

The Commission deflects, arguing that the "original source" rule is merely a "'limited exception' to the definition of 'original information'" and does not provide an alternative means of satisfying the "led to" requirement. SEC-Br.34-35. But the Commission misses the point. The "original source" provisions are important here because the Commission's interpretation of the "led to" requirement would make these provisions obsolete. According to the Commission, if it obtains "an original source's information and use[s] it to open an investigation *before* the original source provided the information to the Commission, he or she is not eligible for an award." SEC-Br.35. But if this is the case, "the original source language would do zero or close-to-zero work." TAF-Coalition-Br.11. That a whistleblower gave "original information" under the "original source" provisions would be useless because his submission wouldn't lead to the enforcement action (because the information was already known to the Commission). The "original source" provisions would apply only in "the borderline-absurd circumstance where the SEC: (1) learns a whistleblower's information through some intermediary; (2) declines at that time to act on it; (3) later learns *the same* information directly from the whistleblower; and (4) chooses at that second point to act on the wholly redundant submission." TAF-Coalition-Br.11. An interpretation that

6

would "emasculate" these provisions isn't correct. *Texas Educ. Agency v. U.S. Dep't of Educ.*, 908 F.3d 127, 133 (5th Cir. 2018).

Importantly, Kane's reading is confirmed *by the Commission itself*, which just a few years ago held that Rule 21F-4(c)(1) was satisfied even though the Commission first read the information in an online report before receiving the whistleblower's tip. *See Order Determining Whistleblower Award Claims*, 2022 WL 768309, at *3-4 (Mar. 11, 2022) ("2022 Order"); Pet-Br.39. The Commission concedes that it has flipped its position. SEC-Br.15-16, 50-51. And it doesn't deny that Kane would have received an award if the Commission had followed its precedent and prior guidance. Indeed, the Commission is now punishing Kane, who filed his tip in 2018, for interpreting Rule 21F-4(c)(1) *the same way* the Commission did four years later.

The Commission argues that its interpretation is consistent with a hypothetical it presented in the 2011 preamble adopting the rules. SEC-Br.44-45. Of course, what controls is the text of the rules, not a hypothetical in the preamble. *See Peabody Twentymile Mining, LLC v. Sec'y of Lab.*, 931 F.3d 992, 998 (10th Cir. 2019). Regardless, the Commission's hypothetical has no application here. The Commission addressed how it would apply its rules if "one person makes a submission based upon information obtained from a second person, and the second person (the original source of the information) later submits the same information." *Securities Whistleblower Incentives and Protections*, 76 Fed. Reg. 34300, 34321 (June 13, 2011). The concern was that "the second submitter might obtain the award, to the exclusion of the first person, even though the

7

second person may have known about the violations for an extended period, done nothing to stop them, and only made a submission after learning about the first person's submission." *Id.* But there is no such concern when the Commission learns a whistleblower's information through a public disclosure because only one person will be eligible for an award. Here, if another person had submitted Kane's information, that person's information would not be "original information" because it was "already known to the Commission from [another] source" and the person was not the "original source of the information." 17 C.F.R. §240.21F-4(b)(ii) & (iii); *see* 15 U.S.C. §78u-6(a)(3) (same). Kane thus is the only person who can receive an award based on the "original information" that led to the successful enforcement action.

The Commission's interpretation of this hypothetical also contradicts the agency's discussion in the preamble on how it would apply Rule 21F-4(c)(1). When the Commission adopted Rule 21F-4(c)(1), it never claimed that the whistleblower's "submission" must lead to the successful action. Pet-Br.9-10. Instead, the Commission said it would look to the whistleblower's "submission" only for evidence that his "original information" caused the Commission to act. 76 Fed. Reg. at 34324-25. Rule 21F-4(c)(1) would be satisfied when "the submission identifies persons, entities, places, times and/or conduct that correspond to those alleged by the Commission in the judicial or administrative action." *Id.* The Commission now insists that it "would have imposed a timing requirement for when [a] submission must occur" if the "principal purpose" of requiring a tip was to "serve as an 'evidentiary source' for the agency to

8

use at the award processing stage." SEC-Br.50. But the lack of a timing requirement is not a surprise. When it adopted the rules, the Commission stressed that it did not "anticipate a rigid, mechanical application of" Rule 21F-4(c)(1). 76 Fed. Reg. at 34324. The Commission also already has tools that strongly incentivize whistleblowers to report their original information as quickly as possible. Pet-Br.40. Indeed, the Commission followed Kane's interpretation for years, yet it never proposed adopting such rules. To the extent the Commission wants to adopt new timing rules now, it is free to do so. Pet-Br.41. But it cannot effectively amend its rules now "under the guise of interpreting a regulation." *Christensen v. Harris County*, 529 U.S. 576, 588 (2000).

**3.** Unsatisfied with its reasoning below, the Commission comes up with a new argument. The Commission appears to argue that no "original information" led to a successful enforcement action because Kane was not a "whistleblower" when he published his report. SEC-Br.39, 44. The Commission never made this argument below. *See* Ex.7, Order, 1-13. Nor did it ever dispute that Kane's "original information" led to the successful enforcement action. *Id.*; *see, e.g.*, Ex.6, Response to Preliminary Determination, 11 (noting that "Kane's original information (the Robinhood article) indisputably caused the Commission to open an investigation into Robinhood"). The Commission thus cannot raise this argument now. *See Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 469 (5th Cir. 2024).[1]

---

[1] The closest the Commission comes to preserving this argument is a stray sentence (at page 7 of the Order), where it says that "at the time that Staff opened the

The Commission's new argument fails regardless. For the first time, the Commission (at 39) relies on part of the statutory definition of "original information," which requires that the information be "derived from the independent knowledge or analysis of a *whistleblower*," 15 U.S.C. §78u-6(a)(3)(A) (emphasis added), as evidence that "original information" cannot exist until the information has been reported to the Commission. But that provision doesn't impose a sequential order of operations; it merely states that the independent knowledge and analysis must come from the whistleblower (and not someone else). This argument is also, once again, incompatible with Rule 21F-4(c)(3) and the "original source" provisions, which specifically contemplate that information can be "original information" before a whistleblower has reported it to the Commission. *Supra* 5-7; *infra* 17-18.

The Commission claims that the "original source" provision is an "exception" to the "general requirement that a whistleblower must provide information that 'is not known to the Commission from any other source,'" and statutory exceptions must be

---

Investigation in September 2018, [Kane] was not a 'whistleblower' as defined within the meaning of Rule 21F-2(a)(1) because [Kane] had not provided information in writing to the Commission." But this sentence doesn't fairly present the argument the Commission is making now, and the Commission never claims (then or now) that this sentence formed the basis of its denial. *See* Pet-Br.45-46. Indeed, in a similar order issued a day earlier, the Commission made the same statement and made clear that it was "not a basis for [the] denial" of the award. *See Order Determining Whistleblower Award Claims*, 2025 WL 2778779, at *3 n.5 (Sep. 29, 2025). And even on appeal of that order, where the Eleventh Circuit is currently examining this same legal issue, the Commission continues to not press this argument. *See generally* SEC Brief, *Doe v. SEC*, No. 25-13647 (11th Cir. Apr. 24, 2026); SEC-Br.iii.

"construed narrowly." SEC-Br.40. But Kane is not asking the Court to broadly construe the "original source" provisions. Again, the key point is that the Commission's interpretation of the "led to" requirement would render the "original source" provisions superfluous and insignificant. *Texas Educ.*, 908 F.3d at 133; *supra* 6-7. Nor is this statutory canon even applicable. Because the Exchange Act "gives no 'textual indication' that [this] exemption[] should be construed narrowly, there is no reason to give [it] anything other than a fair (rather than a 'narrow') interpretation." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88-89 (2018) (cleaned up).

**4.** Lacking a persuasive textual reading of Rule 21F-4(c)(1), the Commission repeatedly urges the Court to adopt what it sees as a "commonsense" interpretation that fulfills the "purpose" of the whistleblowing statute. SEC-Br.33, 35-42. Of course, "[g]iven the clear meaning of the text" of the rule, "there is no need … to consult the purpose of [the Exchange Act] at all." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004). The plain text controls.

Regardless, it is Kane's reading that reflects "commonsense" and best fulfills the purposes of the whistleblower program. *See* Pet-Br.32-26, 40-41. Under the Commission's interpretation, a whistleblower will not satisfy the "led to" requirement if the Commission discovers the whistleblower's information through a public disclosure before reviewing the whistleblower's tip. If this is the consequence of exposing the misconduct more broadly, no rational individual will blow the whistle publicly. Pet-Br.32-36. But continued silence serves none of the goals of the

11

whistleblower program, such as quickly remediating harms to investors caused by securities violations. *Id.* Whistleblower silence also erodes transparency in the financial markets by allowing the misconduct to continue without market correction. Pet-Br.34-35; TAF-Coalition-Br.15-23; Nat'l-Whistleblower-Br.29-32. And it increases the likelihood that the Commission fails to root out and stop securities violations by undercutting one of the most effective means of uncovering misconduct: an investigatory media and a market that swiftly reacts to allegations of misconduct. Pet-Br.33-35; TAF-Coalition-Br.13-21; Nat'l-Whistleblower-Br.29-32. Without this attention, the Commission is more likely to overlook it among the "thousands of tips [submitted] each year." SEC OIG, *The SEC Can Further Strengthen the Tips, Complaints, and Referrals Program*, Rep. No. 566, at 24 (Feb. 24, 2021), bit.ly/4usciCL; *see also id.* at 2, 8-9 ("due to the volume" of tips the Commission receives, a tip typically gets only "10 minutes" of a "cursory" staff review and is sometimes lost or neglected for hundreds of days).

The Commission doesn't deny that its interpretation of Rule 21F-4(c)(1) makes it less likely that whistleblowers will also disclose misconduct publicly. *See* SEC-Br.49. Nor does the Commission dispute that its interpretation would lead to "absurd outcomes," where a whistleblower who goes public after filing a tip would fail to satisfy the "led to" requirement if the Commission reviewed the public source first. Pet-Br.35-36 (discussing a Jane Doe hypothetical). The Commission says that it is standard protocol to search its database to determine if whistleblowers provided relevant

12

information before opening an investigation. SEC-Br.49. But any such search wouldn't help Jane Doe; her tip could never satisfy the "led to" requirement, according to the Commission, because the agency already knew about it from the public disclosure. The Commission suggests that it could use its exemptive authority to award this whistleblower. SEC-Br.49-50. But no whistleblower would purposely risk violating the rules on the hope that the Commission would use its exemptive authority later. Indeed, the Commission says that it has denied exemptions from the "led to" requirement before, SEC-Br.52, and the Commission refused to use its exemptive authority *in this case* for a deserving whistleblower whose original information undeniably "led to" the successful enforcement action, Pet-Br.47-52.

The Commission suggests that these consequences are irrelevant because Congress cared only about encouraging whistleblowers to tell the SEC, not the public at large. SEC-Br.48-49. But that isn't true. *See* Pet-Br.36; TAF-Coalition-Br.18-20; Nat'l-Whistleblower-Br.11-24. After all, the "fundamental purpose" of federal securities laws is to promote a "philosophy of full disclosure," *SEC v. Cap. Gains Rsch. Bureau*, 375 U.S. 180, 186 (1963), because "'[t]here cannot be honest markets without honest publicity,'" *Basic Inc. v. Levinson*, 485 U.S. 224, 230 (1988); *see* Pet-Br.5-7. The Commission's argument also directly "contravenes decades of Congressional lawmaking" in other whistleblowing statutes, which similarly authorize individuals to receive awards even when the agency learns about their original information through public sources. *See* Nat'l-Whistleblower-Br.11. And even if motivating individuals who know of securities

violations to "tell the SEC" was Congress's primary motivation, *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 162 (2018), Congress certainly did not want to *discourage* whistleblowers from going public. Nothing would be served by that outcome. Indeed, the model whistleblower that Congress had in mind (Harry Markopolos, who blew the whistle on Bernie Madoff) repeatedly "sought to draw attention to Madoff's fraud in other ways, including by helping to place articles raising questions about Madoff in the financial press." TAF-Coalition-Br.18-20; *see also* Pet-Br.33-34. That the "modern-day Markopolos would receive nothing" under the Commission's reading shows how misguided the Commission's arguments are. TAF-Coalition-Br.19.

The Commission speculates that Kane's interpretation could lead to belated claims from whistleblowers who contact the Commission "years after the investigation begins" because they "wait[ed] until the Commission publicly filed its enforcement action before coming forward." SEC-Br.38. The Commission tilts at windmills. As explained, no one would intentionally delay reporting given the financial incentives to come forward as soon as possible. Pet-Br.40-41. Late-filing claimants also would need to show that they had "original information" and it "led to" the successful enforcement action—an evidentiary burden that only gets harder with the passage of time. Even then, the Commission could (as it regularly does) give the whistleblower a smaller award because of his tardiness. *See, e.g., Order Determining Whistleblower Award Claims*, 2023 WL 2771173, *3 (Mar. 31, 2023) (lowering the award the whistleblower received because he "delayed reporting to the Commission for several years"); *see also* Ex.6, Response to

14

Preliminary Determination, 19 n.12. And if late-filing claimants were truly a problem, the Commission is free to adopt rules imposing timing requirements for submitting a formal tip after public disclosure. *See* Pet-Br.41; *see, e.g.*, 17 C.F.R. §240.21F-4(c)(3) (whistleblowers satisfy the "led to" requirement only if they submit the same information to the Commission within "120 days of providing it to the entity").[2]

**5.** Noting that regulations should be construed "in light of the statute" they implement, the Commission argues that the statute mandates that "a whistleblower's submission to the Commission must have 'led to' the success of a covered action." SEC-Br.33, 43. Not so. As Kane explained, the text, structure, and purpose of Section 21F(b)(1) all support Kane' reading of Rule 21F-4(c)(1). Pet-Br.42-45. At a minimum, nothing in the Exchange Act *prohibited* the Commission from adopting Rule 21F-4(c)(1), as interpreted by Kane, to implement the "led to" requirement. *See* 15 U.S.C. §78u-6(j) (granting the Commission rulemaking authority to implement the whistleblower

---

[2] The Commission's repeated insistence that it "found the article on its own initiative" vastly overstates the effort from the Commission. SEC-Br.18. Kane's article created a "media firestorm" and was "impossible to miss." Ex.5, Kane Decl., ¶49; Ex.4, Myers Decl., ¶21; Pet-Br.17. Indeed, this widespread attention shows why public disclosure of wrongdoing is so important. *See* Pet-Br.5-7. Equally unpersuasive is the Commission's suggestion that Kane's information wasn't valuable because of an earlier "examination" and subsequent investigatory steps. SEC-Br.17, 21. The Commission never denies that it opened its investigation into Robinhood—which occurred four days after Kane's article was published—because of Kane's public disclosures. *See* Pet-Br.18-19.

15

provisions of the statute); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (Statutes may authorize an agency to "'fill up the details' of a statutory scheme.").

Tellingly, the Commission starts its interpretation of Section 21F(b)(1) not with the text of the statute, but with a stray snippet from a nonbinding case. *See* SEC-Br.33 (citing *Kilgour v. SEC*, 942 F.3d 113 (2d Cir. 2019)). That case isn't helpful to the Commission's cause. In *Kilgour*, the Second Circuit made its remark about what the statute "seems to require" in the context of Rule 21F-4(c)(2), which *does* focus on the applicant's "submission." *See* Pet-Br.37-38. And far from agreeing with the Commission, the Second Circuit refused to endorse the Commission's interpretation, concluding that "Section 78u-6 says nothing about whether a whistleblower can be given an award if their submission was not used by the SEC to bring a successful enforcement action." *Kilgour*, 942 F.3d at 122. Indeed, while the Dodd-Frank Act repeatedly focuses on the effect of the whistleblower's "original information," the statute never once uses the word "submission." *See* TAF-Coalition-Br.10. The Second Circuit ruled for the Commission only because (in a *Chevron* world) the SEC's focus on a whistleblower's "submission"—through Rule 21F-4(c)(2)—was "'based on a permissible construction of the statute.'" *Kilgour*, 942 F.3d at 122 (quoting *Chevron v. NRDC*, 457 U.S. 837, 843 (1984)).

As it did with Rule 21F-4(c)(1), the Commission offers no grammatically correct reading of the statute. Indeed, the Commission appears to recognize that the text is against it, suggesting that Section 21F is an "instance[] of inartful drafting." SEC-Br.37

16

n.11. Section 21F(b)(1) states that the Commission must pay an award to whistleblowers who "voluntarily provided original information to the Commission that led to the successful enforcement" of a covered action. 15 U.S.C. §78u-6(b)(1). The Commission asserts (with no authority in support) that "original information" is "the object of 'provided … to the Commission,' meaning that it must be the information an individual provided to the SEC … that caused the successful result." SEC-Br.36. But that isn't correct. "Original information" is the direct object of "provided"; "to the Commission" is a separate prepositional phrase that indicates the recipient. *See* Bryan A. Garner, *Garner's Modern American Usage* 907 (3d ed. 2009) (a "direct object" is a "noun or noun phrase that receives the action of a transitive verb," like "Bryan enjoys *golf*"). And the phrase "that led to the successful enforcement" is a relative clause that modifies "original information." *See* Pet-Br.28. So it is the "original information" that must have "led to the successful enforcement" action—not the act of providing it to the Commission. Pet-Br.29. And that is what occurred here: Kane's original information led to the Commission's successful enforcement action, and Kane provided this information to the Commission. Pet-Br.15-20.

The Commission insists that its interpretation is the "natural" and "commonsense" reading of the statute because it "tracks the sequence of events set out in the statute": *i.e.*, the Commission receives a tip directly from the whistleblower and then uses that tip to obtain a successful enforcement. SEC-Br.33. But the Commission's own rules debunk this "natural" reading. Rule 21F-4(c)(3) provides that the "led to"

17

requirement is met if the whistleblower "reported original information through an entity's internal" compliance procedures and the entity "later provide[s] [the whistleblower's] information to the Commission," as long as the whistleblower provides the information to the Commission "within 120 days of providing it to the entity." 17 C.F.R. §240.21F-4(c)(3). In other words, Rule 21F-4(c)(3) *is incompatible* with the Commission's interpretation of Section 21F(b)(1) because the rule says that the "led to" requirement can be met when the Commission receives the whistleblower's tip *after* the Commission heard it from the offending entity. Unsurprisingly, the Commission has no explanation for how its interpretation of Section 21F(b)(1) can coexist with Rule 21F-4(c)(3). *See* TAF-Coalition-Br.21; *see also Digital Realty*, 583 U.S. at 165 (more than 80% of whistleblowers report internally). The Commission's statutory interpretation is equally incompatible with the "original source" provisions, as explained above. *Supra* 6-7.

The Commission suggests that Section 21F prohibits a whistleblower from recovering for a "related action" unless his submission led to a successful enforcement action. SEC-Br.36-37. But that reading similarly would nullify the "original source" provisions and Rule 21F-4(c)(3), as it would prohibit recovery for "related actions" when the Commission learned the whistleblower's information first through another source (*e.g.*, when the Commission received the whistleblower's information first through an entity after the whistleblower reported internally); *see also* TAF-Coalition-Br.19-20 (Commission's interpretation would make it less likely that whistleblowers

18

would report to other law enforcement authorities). The Commission's definition of "related action" in its rules also turns on the effect of the "original information," not the submission. *See* 17 C.F.R. §240.21F-3(b). A "related action" is an action brought by another entity that is "based on the same *original information* that [1] the whistleblower voluntarily provided to the Commission, and that [2] led the Commission to obtain monetary sanctions totaling more than $1,000,000." *Id.* (emphasis added). Kane satisfies both requirements. Pet-Br.15-20.

The Commission claims that the "overall structure" of the statute "demonstrates that the provision of information to the Commission is a central (and predominant component of the award program." SEC-Br.40-41. But no one disputes that whistleblowers need to give their original information to the Commission. Kane did that here. The question is whether Congress requires that the whistleblower's *submission* must lead to the successful enforcement action. Nothing in the structure of the statute mandates such a result.[3]

Doubling down, the Commission claims that Kane's reading would make filing a tip "irrelevant" and a "ministerial step." SEC-Br.36-37. But that isn't true, as Kane

---

[3] *Digital Realty* has no application here, as that case addressed the anti-retaliation provision of the Exchange Act, not the "led to" requirement. 583 U.S. at 153. Nor does it stand for the principle that nothing a whistleblower does matters until he "becom[es] [an] SEC whistleblower[]" by reporting to the Commission. SEC-Br.41. If a whistleblower reports internally and then reports to the Commission, Section 21F protects the whistleblower from retaliation for reporting internally even though he did so *before* he reported to the Commission. *Digital Realty*, 583 U.S. at 156, 165; *see, e.g., Kuba v. Disney Fin. Servs., LLC*, 623 F. Supp. 3d 1290, 1301, 1309 (M.D. Fla. 2022).

explained without any response from the Commission. *See* Pet-Br.30-31. Even if the Commission has received the whistleblower's original information, a formal tip allows the Commission to evaluate a future claim for an award, helps the Commission efficiently process the information it receives, ensures the credibility of the information the Commission already has by requiring a sworn declaration, and allows the Commission to promptly assess whether heightened confidentiality protections are needed. Pet-Br.30-31. Those aren't Kane's ideas; they come directly from the Commission. *Id.*

**6.** As Amici discuss, *see* Nat'l-Whistleblower-Br.11-25; TAF-Coalition-Br.4-6, Kane's interpretation is confirmed by the history of other whistleblower statutes that preceded the SEC's whistleblower program. "Every whistleblower program Congress has created since 1986 mandates awards for 'original sources.'" TAF-Coalition-Br.6. Under the False Claims Act, for example, an individual can file an action even if there was public disclosure in "the news media," as long as "the person bringing the action is an original source of the information." 31 U.S.C. §3730(e)(4)(A). Similarly, under the IRS whistleblower law, if the IRS learned of the whistleblower's information "from the news media," the whistleblower's award can be reduced, but it cannot be reduced "if the information resulting in the initiation of the action … was originally provided by" the whistleblower. 26 U.S.C. §7623(b)(2); *see* S. Rep. 111-176, at 111 (2010) (SEC whistleblower program was modeled on the IRS's whistleblower program). The SEC's

"original source" provisions function in a similar way. Nat'l-Whistleblower-Br.11-25; TAF-Coalition-Br.4-6.

The Commission brushes this history aside, claiming that these statutes are irrelevant because they apply in a "broader" context, whereas Section 21F creates an exception only for "whistleblowers." SEC-Br.39 n.12. But the reference to "whistleblowers" in the definition of "original information" does not prohibit whistleblowers like Kane from receiving an award, as explained above. *Supra* 9-10. Nor is the Commission's assertion even correct. The IRS Whistleblower Program, for example, also applies only to "whistleblowers." 26 U.S.C. §7623(b)(2)(B) & (b)(1).

The Commission also misses the bigger point. In his briefing, Kane explained why he has the best textualist reading of Rule 21F-4(c)(1) and Section 21F(b)(1). The Commission's primary defense is to call Kane' reading "unnatural," lacking in "common sense," and contrary to the "purposes" of the whistleblower program. SEC-Br.33, 44, 54. But these other whistleblower programs show otherwise. Congress wants whistleblowers to expose misconduct far and wide. Nat'l-Whistleblower-Br.11-25; TAF-Coalition-Br.18-20. And it certainly doesn't want to *discourage* whistleblowers from going public. Nat'l-Whistleblower-Br.11-25; TAF-Coalition-Br.18-20. Yet that is what the Commission's reading would do.

**7.** As Kane explained, he also satisfied Rule 21F-4(c)(1) and Section 21F(b)(1) when he published his Robinhood article online, knowing that his actions would "cause [the Commission] to have" his original information. Pet-Br.41-42 (quoting *Give*,

21

Webster's II New College Dictionary (2001)); *see also* Pet-Br.44 (statute satisfied for similar reasons). The Commission doesn't dispute that "[t]he word 'give' does not require a direct transfer." Pet-Br.41; *see Adams v. All Coast, LLC*, 15 F.4th 365, 371 (5th Cir. 2021) ("This court often looks to dictionary definitions to determine the ordinary meaning of key statutory terms."). Instead of providing a counter-definition, the Commission simply calls this argument "absurd[]." SEC-Br.46. The Commission argues that Kane did not "give" this information to the Commission because he didn't follow "the procedures that a whistleblower must follow when providing original information to the Commission." SEC-Br.46-47. But that isn't correct. After Kane gave his information to the Commission through his online publication, he perfected his submission by filing his original information with the Commission through a sworn Form TCR. Pet-Br.17; Ex.6, Response to Preliminary Determination, 8 n.3. Kane satisfies Rule 21F-4(c)(1) for this reason as well.

**8.** Finally, if the Court concludes that Kane does not satisfy the "led to" requirement in Rule 21F-4(c)(1), he still satisfies the statute's "led to" requirement. *See* Pet-Br.44-45; *supra* 15-17. Amazingly, despite insisting for most of its brief that the Court must focus on the statute, the Commission flips back to its original argument, claiming that Rule 21F-4(c) presents "the exclusive circumstances that satisfy the 'led to' requirement." SEC-Br.47-48. But the Commission never engages with the text of its rule, pointing instead to a D.C. Circuit decision that was issued under *Chevron* deference and a footnote from the preamble to its rules. SEC-Br.46-47; *see* Pet-Br.44-45 & n.5. In

22

any event, because Kane satisfies Rule 21F-4(c)(1), he has met the "led to" requirement and is entitled to an award.

## II. The Commission improperly denied Kane an exemption.

Even if the Commission's reading of the rules and statute were correct, the Commission still acted arbitrarily when it refused to grant Kane an exemption. Pet-Br.47-52. The Exchange Act empowers the Commission to grant an exemption where "necessary or appropriate in the public interest" and "consistent with the protection of investors." 15 U.S.C. §78mm(a)(1). Before the agency, Kane explained why he met those standards. By reporting publicly, he caused investors to learn of the malfeasance faster than they would have if he had gone only to the Commission. Robinhood initiated an internal investigation and provided those results to the Commission. And Kane did everything else right. Pet-Br.49-50. Indeed, though the Commission insists this is no mere "procedural matter," SEC-Br.52-53, it doesn't deny that Kane would have received an award had he simply filed his Form TCR before publishing his article. Pet-Br.49.

The Commission fails to rehabilitate its cursory dismissal below. The Commission claims that it *implicitly* made findings that the "public interest" did not favor an exemption when it "focused on whether granting an exemption would align with Section 21F's core objective." SEC-Br.53. But nothing in the Order allows the Court to make that assumption. Nor did the Commission devote a single word (explicitly or implicitly) to whether a denial of an exemption was consistent with the

23

"protection of investors." *See* 15 U.S.C. §78mm(a)(1). The Commission's "fail[ure] to account" for these mandatory factors was arbitrary and capricious. *BNSF Ry. Co. v. Fed. R.R. Admin.*, 62 F.4th 905, 910 (5th Cir. 2023); *Cboe Futures Exch., LLC v. SEC*, 77 F.4th 971, 977-78 (D.C. Cir. 2023).

Importantly, the Commission insists that it *will* grant exemptions to the "led to" requirement in certain circumstances. SEC-Br.49-50; *e.g.*, Pet-Br.48-49. Yet its reasoning here is based almost entirely on the importance of the "led to" requirement. The D.C. Circuit recently rejected a similar argument when it found that the SEC abused its discretion by denying a whistleblower an exemption from its rules. *See Doe v. SEC*, --- F.4th ---, 2026 WL 1191372, at *1, 6-7 (D.C. Cir. Apr. 17, 2026). As the court explained, "it is not enough for the Commission to restate general policy goals underlying the requirements the applicant apparently failed to meet." *Doe*, 2026 WL 1191372, at *7. The Commission needed to explain why the circumstances *in this case* warranted refusing an exemption.[4]

In its Order, the Commission concluded that Kane was "not unsophisticated" because he regularly traded stocks and wrote financial articles. Ex.7, Order, 11-12. If the Commission was suggesting that Kane's trading knowledge meant that he should

---

[4] Whether the Commission has declined to waive the "led to" requirement in the past is not responsive. That does not address Kane's "argument that this is one of those circumstances in which it should be waived." *Gas Transmission Nw. Corp. v. FERC*, 363 F.3d 500, 503 (D.C. Cir. 2004). Indeed, one of the reasons the Commission did not need to use its waiver authority in the past was because the Commission used to interpret Rule 21F-4(c)(1) the same way as Kane. *See* Pet-Br.50-51.

have understood the Commission's "led to" rules, that is more than ironic because Kane read the rules *the same way* the Commission did in 2022. Kane was an unrepresented college student (and a victim of Robinhood's misrepresentations himself) who believed he was complying with the Commission's rules. Pet-Br.13-15; Ex.5, Kane Decl., ¶¶7, 32. And far from purposely delaying for personal gain (as the Commission implies, *see* SEC-Br.30), Kane waited a few weeks before filing his Form TCR so that he could interview new leads, catalogue his evidence, and fact-check Robinhood public statements so he would be as "prepared as possible to speak in depth with the Staff when they reached out." Pet-Br.17-18; *cf.* 76 Fed. Reg. at 34331 (whistleblower may receive lower award only for *unreasonable* reporting delays). The Commission never explains why these individual circumstances would or would not affect the "public interest" and the "protection of investors."

The Commission's remaining justification—that it would not be "unfair" to deny awards to whistleblowers who disclose to the public first—is unresponsive. When Kane blew the whistle, the Commission immediately opened an investigation and Robinhood conducted an internal audit that confirmed all of Kane's findings. Were Kane's public disclosures and the internal investigation it caused worthy endeavors that furthered the "public interest" and supported the "protection of investors"? The Commission never says. Pet-Br.48. And why, when the Commission's rules strongly encourage whistleblowers to "remediate the harm caused by the violations," 17 C.F.R. §240.21F-6(a)(2); *see* Pet-Br.33, 40, were Kane's efforts not seen as fulfilling that

25

mission? The Commission is again silent. Nor does the Commission explain why it would be "fair" to rigorously enforce a rule that the Commission itself previously read the same way as Kane. The Commission, just as it has elsewhere, abused its discretion by denying an exemption. *See Doe*, 2026 WL 1191372, at *6-7.

## CONCLUSION

The Court should grant the Petition, vacate the Commission's Order, and remand with instructions to grant Kane an award.

Dated: May 27, 2026                    Respectfully submitted,

                                       */s/ J. Michael Connolly*

Jordan A. Thomas                       J. Michael Connolly
SEC Whistleblower Advocates PLLC         *Counsel of Record*
3101 Wilson Boulevard, Suite 500       Steven C. Begakis
Arlington, VA 22201                    Peter Allevato
(202) 746-9314                         Consovoy McCarthy PLLC
JThomas@secadvocates.com               1600 Wilson Blvd., Suite 700
                                       Arlington, VA 22209
                                       (703) 243-9423
                                       mike@consovoymccarthy.com
                                       steven@consovoymccarthy.com
                                       peter@consovoymccarthy.com

                                       *Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule of Appellate Procedure 32(a)(7) because it contains 6,477 words, excluding the portions exempted by Rule 32(f); and (2) Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in 14-point Garamond (a proportionally spaced typeface) using Microsoft Word.

*/s/ J. Michael Connolly*
J. Michael Connolly

## CERTIFICATE OF SERVICE

I certify that on May 27, 2026, the foregoing was filed under seal with the court using the CM/ECF system, and all counsel of record were served in compliance with Fed. R. App. P. 25(c).

*/s/ J. Michael Connolly*
J. Michael Connolly